MARY W. LIVINGSTON, Respondent, *v.* WILLIAM S. LIVINGSTON, Appellant.

CONSTITUTIONAL LAW — JUDGMENT FOR ALIMONY CONSTITUTES PROPERTY OF WIFE OF WHICH SHE CANNOT BE DEPRIVED WITHOUT DUE PROCESS OF LAW — L. 1900, CH. 742, IN SO FAR AS IT AFFECTS PRIOR JUDGMENTS FOR ALIMONY, UNCONSTITUTIONAL. A final judgment granting a divorce and directing the defendant to pay a certain sum per year for the plaintiff's support and the education and maintenance of her children creates and vests substantial rights which constitute property of the plaintiff, of which she cannot be deprived without due process of law (Const. art. I, § 6); and a subsequent statute (L. 1900, ch. 742), permitting the court, upon the application of either party to an action, at any time after final judgment, whether heretofore or hereafter rendered, to annul, vary or modify a direction of such judgment requiring the defendant to provide for the education and maintenance of the children of the marriage and for the support of the plaintiff, is unconstitutional in so far as it attempts to confer a power upon the court to annul, or vary, valid and final judgments rendered before the enactment of the statute.

*Livingston* v. *Livingston*, 74 App. Div. 261, affirmed.

(Argued January 7, 1903; decided February 10, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 15, 1902, which reversed an order of Special Term modifying a judgment of divorce, previously entered, by reducing the amount of alimony to be paid by the defendant to the plaintiff.

The facts, so far as material, are stated in the opinion.

*J. Van Vechten Olcott* for appellant. The order appealed from is reviewable by this court. ( *Wetmore* v. *Wetmore*, 162 N. Y. 503.) Section 1759, subdivision 2, of the Code of Civil Procedure, as amended by chapter 742 of the Laws of 1900, confers upon this court the power to grant the relief sought by this motion. ( *Walker* v. *Walker*, 155 N. Y. 77.) A provision in a decree of divorce requiring the husband to pay the wife alimony does not constitute a vested right belonging to the wife and, therefore, the constitutionality of chapter 742, Laws of 1900, cannot be attacked on the ground that it impairs

a vested right. (2 Am. & Eng. Ency. of Law [2d ed.], 93 ; *Burr* v. *Burr*, 7 Hill, 207 ; *Wallingsford* v. *Wallingsford*, 6 H. & J. 485 ; *Romaine* v. *Chauncy*, 129 N. Y. 566 ; *Sargent* v. *Sargent*, 3 N. B. N. 516 ; *Barclay* v. *Barclay*, 2 N. B. N. 552 ; *Maisner* v. *Maisner*, 62 App. Div. 286 ; *Barbour* v. *Barbour*, 46 Me. 9 ; *Talbot* v. *Talbot*, 14 R. I. 57 ; *Moore* v. *Mayor, etc.*, 4 Sandf. 456 ; 8 N. Y. 110 ; *Pratt* v. *Tefft*, 14 Mich. 191 ; *Hammond* v. *Pennock*, 61 N. Y. 145.) The constitutionality of chapter 742, Laws of 1900, cannot be attacked on the ground that it impairs the obligation of a contract. (*O'Brien* v. *Young*, 95 N. Y. 428 ; *State of Louisiana* v. *City of New Orleans*, 109 U. S. 285 ; *Morley* v. *L. S. & M. S. R. Co.*, 146 U. S. 162 ; *G. S. Bank* v. *Vil. of Suspension Bridge*, 159 N. Y. 362 ; *Matter of Green*, 55 App. Div. 475.) The constitutionality of section 1759, subdivision 2, of the Code of Civil Procedure cannot be attacked on the ground that in the amendment thereof the legislature has exercised judicial functions. (*Lynde* v. *Lynde*, 162 N. Y. 407.) The unconstitutionality of a statute must be clear and manifest before a court should declare it, so that where any reasonable doubt exists as to its constitutionality, it should be upheld. (*Ex parte McCollum*, 1 Cow. 550 ; *Coutant* v. *People*, 11 Wend. 511 ; *Clark* v. *People*, 26 Wend. 599 ; *Morris* v. *People*, 3 Den. 381 ; *N. Y., etc., R. Co.* v. *Van Horn*, 57 N. Y. 473 ; *Sweet* v. *City of Syracuse*, 129 N. Y. 316.)

*Benjamin Steinhardt* for respondent. The appeal herein should be dismissed. (*Matter of Attorney-General*, 155 N. Y. 441 ; Code Civ. Pro. §§ 190, 191, 1294, 1300, 1347, 1349, 1356, 1357, 3333 and 3334 ; *H. T. Co.* v. *W. T. & R. R. R. Co.*, 121 N. Y. 397 ; *Bate* v. *McDowell*, 97 N. Y. 646 ; *Allen* v. *Meyer*, 73 N. Y. 1 ; *Osterhoudt* v. *Osterhoudt*, 168 N. Y. 358 ; *People ex rel.* v. *Sternberger*, 153 N. Y. 684 ; *Matter of Welch*, 74 N. Y. 299 ; *Bryan* v. *Thompson*, 128 N. Y. 426.) Chapter 742 of the Laws of 1900 so far as it amends section 1759 of the Code of Civil Procedure in per-

mitting the court to annul, vary or modify a judgment previously rendered, is unconstitutional. (*Walker* v. *Walker*, 155 N. Y. 77; *Kamp* v. *Kamp*, 59 N. Y. 212; *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456; *Johns* v. *Johns*, 44 App. Div. 533; *Hauscheld* v. *Hauscheld*, 33 App. Div. 296; *Shepherd* v. *Shepherd*, 1 Hun, 240; *Noble* v. *Noble*, 20 App. Div. 395; *Park* v. *Park*, 18 Hun, 466; *Miller* v. *Miller*, 7 Hun, 208; *Lansing* v. *Lansing*, 4 Lans. 377; *Bucki* v. *Bucki*, 26 Misc. Rep. 67.)

GRAY, J. This was an application by the defendant for an order modifying and varying the direction as to alimony, contained in a judgment which had dissolved the marriage of the parties. The application was granted and an order was made changing the provisions of the judgment of divorce, by reducing the amount of alimony ordered to be paid by the defendant to the plaintiff from four thousand dollars to three thousand dollars a year. This order was reversed by the Appellate Division and the motion for the modification of the judgment was denied; whereupon the defendant appealed to this court.

Within the authority of *Wetmore* v. *Wetmore*, (162 N. Y. 503), the order is appealable and this court has jurisdiction to review the determination of the Appellate Division. The appeal presents a question of law as to the validity of chapter 742 of the Laws of 1900; in so far as it has amended section 1759 of the Code of Civil Procedure by permitting the court, upon the application of either party to an action, in which a final judgment has been granted dissolving the marriage of the parties and requiring " the defendant to provide suitably for the education and maintenance of the children of the marriage, and for the support of plaintiff, * * * at any time after final judgment, *whether heretofore or hereafter rendered,* " to annul, vary or modify such a direction. The amendment was in making the statute apply to judgments theretofore rendered. It was decided below that such legislation violated the constitutional provision, that no person shall

be deprived of property without due process of law, (Const. art. 1, § 6), in the attempt to confer a power upon the court to annul, or vary, valid and final judgments theretofore rendered.

The judgment divorcing these parties was rendered in 1892 ; it decreed the custody of their children to the wife, who was plaintiff in the action, and it ordered the defendant to pay to. her, during her lifetime, the sum of four thousand dollars a year, in equal monthly payments in advance, for her support and that of the children. No appeal from the decree was prosecuted by the defendant, and it contained no provision reserving to the court the right thereafter to alter it ; nor did the statute, then in force, confer any. such power, although it existed where the action was for a separation. (Code Civ. Pro. § 1771.)

What jurisdiction the courts of this state acquired to entertain actions of divorce was. conferred, wholly, by statute and their powers are confined to such as are expressed, or as may be incidental to the exercise of the jurisdiction conferred. ( *Walker* v. *Walker*, 155 N. Y. 77.) Concededly, prior to this amendment, the jurisdiction of the court terminated with the final judgment in divorce actions, and there was neither inherent power in, nor authority conferred by the Code upon, the court to modify the judgment. (*Kamp* v. *Kamp*, 59 N. Y. 220 ; *Erkenbrach* v. *Erkenbrach*, 96 ib. 456.) In *Walker* v. *Walker*, the order increased the amount of alimony awarded by a final judgment of divorce, which was lacking in any provision reserving the power to change it, and the discussion in this court related to the effect of the section of the Code, at that time, (1897), in permitting the court, after a final judgment, to annul, vary, or modify it, in its direction for the payment of alimony. The argument was that the statute was remedial and, therefore, should be given a liberal and retroactive effect, and, while the denial of the contention was placed upon the ground that nothing indicated a legislative intent to affect judgments already entered, Judge MARTIN, in his opinion, added the significant remark that " if the doctrine

contended for was sustained, it would apply to the reduction of alimony in judgments existing when the amendments were adopted, as well as to its increase. If such an effect was given to them, their constitutionality might well be doubted, as they might affect the vested rights of a party."

The argument now made is that the provision for alimony " does not constitute a vested right belonging to the wife ; " because, as I understand the contention, alimony, being incidental to the granting of a divorce, is within the discretionary power of the court to vary, according to the altered circumstances of the parties, and is but the wife's " mere potential expectant right " to the particular payments as they become due.   It seems to me that, in such an argument, sight is utterly lost of the nature of a decree awarding alimony, or of the right, which accrues to the wife, as the result of an adjudication by the court ; when, in divorcing the parties from their respective marital obligations, it fixes the alimony to be paid by the husband.   The marriage relation has been terminated by the decree.   The wife has no future rights, and the husband is under no future obligations, such as are founded upon, or spring out of, the marriage relation. Judge FINCH observed in *Matter of Ensign*, (103 N. Y. 284), that, " the court is authorized to give by its decree, in the form of an allowance, a just and adequate substitute for the right of the innocent wife, which the decree cuts off and forbids in the future."   By the decree, in this action, the obligation, before resting upon the husband for the support and education of the children and for the support of his wife, was changed.   It, thereafter, was made to rest upon the wife and the decree adjudged that the husband should pay to her a certain fixed sum of money in a certain manner, in lieu of his previous obligation.   The judgment defined and created a new obligation on his part and as the amendment of the statute, necessarily, affected the wife's right to compel exact performance and bore upon the obligation, to her possible injury, it was obnoxious to the constitutional prohibition. It would be absurd to call it remedial, as affecting merely a

remedy upon the decree.    Even then, it would violate a sub-
stantial right of the plaintiff.    It was, however, in fact, the
impairment of, or interference with, a vested right· conferred
by a final judgment.    The plaintiff's protection in the enjoy-
ment of her right under the decree is not, necessarily, refer-
able to the prohibition in the Federal Constitution against the ·
impairment of the obligations of contracts.    It is not at all
necessary, for the plaintiff's purposes, that the judgment of
divorce should be deemed a contract.    A judgment is not a
contract, in the ordinary sense of an agreement reached
between persons, to whose terms their mutual assent has been
given, and it· is in that sense that the word is used in the
Federal Constitution.    (*State of Louisiana* v. *Mayor of New
Orleans,* 109 U. S. 285.)    A judgment creates an obligation
of the highest nature known to the law and it is enforceable
against the judgment debtor as upon his promise to perform
it; but that promise is only implied by law.    The obligation
is imposed; it is not assumed voluntarily.    But a final judg-
ment creates and vests substantial rights, and, if the statute.
were allowed this retroactive effect, a new stipulation would be
imported into it, in effect, that the defendant's obligation
might be changed upon showing subsequently occurring facts.

In *State of Louisiana* v. *Mayor of New Orleans,* (*supra*),
where it was held that a judgment of damages recovered for
a tort was not a contract in the constitutional sense, Mr.
Justice BRADLEY, in his opinion, takes occasion to say of it,
that " it is founded upon an absolute right and is as much an
article of property, as anything else that a party owns, and the
legislature can no more violate it, without due process of law,
than it can other property."    In  *Gilman* v. *Tucker,* (128 N.
Y. 190), Chief Judge RUGER, delivering the opinion of this
court, said : " We must bear in mind that a judgment has here
been rendered and the rights flowing from it have passed beyond
the legislative power, either directly, or indirectly, to reach or
destroy.    After adjudication, the fruits of the judgment
become rights of property.    These rights became vested by
the action of the court and were thereby placed beyond the

reach of legislative power to affect." So fixed and so invio-
late are the rights secured by a judgment that any legislation,
which attempts to deprive a party of their absolute enjoy-
ment, must be condemned. It has been quite recently held,
in accordance with a line of authorities, that legislation con-
ferring a right to appeal from a judgment, which, according
to existing law, had become final, was violative of section VI
of article I of the State Constitution, as depriving a party of
his property in a vested right conferred by the judgment.
(*Germania Sav. Bank* v. *Village of Suspension Bridge,* 159
N. Y. 362; and see *Burch* v. *Newbury,* 10 ib. 374.) It is the
peculiar privilege enjoyed by the citizens of this country that
the legislative body is not above the law and that its powers are
prescribed and limited by a written Constitution. Their law-
ful contracts are beyond legislative interference and they may
not be deprived of their vested rights without due process of
law. They are secure against an arbitrary exercise of govern-
mental power, which is unrestrained by the established prin-
ciples of private rights. The judgment in this case, in deter-
mining that, for cause, the marriage should be dissolved, also,
determined, with equal finality, that the defendant, while
released from the general duty, or liability, which he had been
under, should pay a fixed sum during the plaintiff's life. Can
it, reasonably, be doubted that a right was vested in the plain-
tiff to the receipt of the annual sums, which the judgment
adjudged the defendant should pay? As Judge CULLEN well
expressed it, in his dissenting opinion at the Appellate
Division, in *Walker* v. *Walker,* (21 App. Div. 226), "the
plaintiff, prior to the decree, had a right of support; by her
divorce, she lost that right and, in substitution for it, acquired
a new right, a judgment requiring the payment to her of a
specific sum of money." That right, as a vested interest, is
property, which the legislature is powerless to divest her of.
If the interest is, as it is claimed, an expectant one, in the
sense that the obligation of the defendant was a continuing
one to pay alimony in the future, nevertheless, the interest
was one fixed by the judgment and was not a mere contin-

gency. It was not a capacity to acquire a right to the payment of money; it was a right fixed by the judgment and, hence, vested in the plaintiff. I think enough has been said, in connection with the careful and elaborate opinion of Mr. Justice INGRAHAM, at the Appellate Division, to warrant me in advising the affirmance of the order appealed from, with costs.

O'BRIEN, J. (dissenting). The plaintiff, in the month of April, 1892, obtained a judgment against the defendant dissolving their marriage and decreeing alimony to the plaintiff in the sum of four thousand dollars per year. In April, 1901, the defendant applied to the court to reduce the alimony upon proofs which disclosed the fact that his pecuniary circumstances and conditions had so changed since the judgment was entered that he was unable to pay that sum annually. The motion was opposed by the plaintiff and the issues referred to a referee to inquire and report upon the defendant's circumstances and financial condition as they then existed. The referee took proofs and made full inquiry and reported that the defendant's income for that year was a trifle more than four thousand dollars per year, and that there was no prospect or probability that it would be any more in the future. He also reported that at the time the judgment was entered the defendant's annual net income was twelve thousand dollars, and advised the court that the alimony should be reduced to three thousand dollars, and the court confirmed the report and so ordered. The learned court below upon appeal has reversed the order and denied the application, but not upon the facts, nor upon any question of discretion, but upon the law, holding that the court had no power to make the reduction, since the statute under which it acted was void as in conflict with the Constitution. That presents the only question in the case. The statute which is thus annulled, in so far as it applies to this case, is section seventeen hundred and fifty-nine of the Code as amended by chapter 742 of the Laws of 1900, and reads as follows: "The court may, in the

final judgment dissolving the marriage, require the defendant to provide suitably for the education and maintenance of the children of the marriage, and for the support of the plaintiff, as justice requires, having regard to the circumstances of the respective parties; and may, by order, upon the application of either party to the action, and after due notice to the other, to be given in such manner as the court shall prescribe, at any time after final judgment, whether heretofore or hereafter rendered, annul, vary or modify such a direction.    But no such application shall be made by a defendant unless leave to make the same shall have been previously granted by the court by order made upon or without notice as the court in its discretion may deem proper after presentation to the court of satisfactory proof that justice requires that such an application should be entertained."    The precise question is whether the legislature has the power to authorize the courts to review and readjust provisions in a judgment for divorce, entered prior to the amendment, concerning the amount of alimony when it appears that the circumstances and financial condition of the parties have changed so that the wants of the wife are less and the ability of the husband to pay has been reduced from twelve thousand dollars to a little over four thousand dollars.    The plaintiff has remarried and has a husband able and willing to support her, and the defendant remarried in another state and now has his second wife and four children to support in the city of New York.

The general power of the legislature with respect to marriage, divorce and alimony is not and cannot be questioned.    It may prescribe how the marriage contract may be made, how established and how and for what cause it may be abrogated or dissolved.    We have before us the case of a woman who is entitled to be supported by two husbands and a man who is bound to support two wives, and it has been solemnly decided that there is no power in any department of the government under which the parties live, nor in all of its departments together, to change, mitigate or modify this situation in the slightest particular.    This is a somewhat striking

25

statement, but it is nothing more than a plain, logical deduction from the record in this case. The mind does not readily accept the assertion without some inquiry with respect to the arguments and reasons upon which the proposition is founded. When it is said that there is one thing at least which the legislature, in the plentitude of its power over all subjects connected with marriage, divorce and alimony, cannot touch, namely, the amount of the alimony when once fixed in the decree, some conclusive reason should be given in support of the assertion, and vague generalizations will not throw much light on the question. If the plaintiff had not been allowed any alimony at all and the defendant was now worth a million or five millions, we are told that there is no power in the state to mitigate the situation, since it is so nominated in the judgment, and that is a thing that cannot be changed by any power on earth. The argument that leads to such astonishing results must be based upon or infected at some point with error. It is not, I think, very difficult to point it out. It consists entirely in the assumption that the legislature violated the Constitution in the enactment of the statute. After reading the briefs of counsel and the discussion in the learned court below, it is rather difficult to perceive the precise provision of the Constitution which is claimed to have been violated. No one has, so to speak, put his finger on the precise provision. But there are only two provisions that can possibly have any application to this case. The first is not a part of the State Constitution at all, but is a part of the Federal Constitution, and it forbids the enactment of any law impairing the obligation of contracts. The contention is that the section of the Code quoted above is such a law.

The mind is at once set upon the inquiry to find out what contract had been impaired in this case, who the parties are that made it, and how it is evidenced. Of course, there can be no contract without parties, and if any contract was made at all it must have been made between the plaintiff and the defendant, and the only evidence of it is the provision in the decree of divorce whereby it is said the defendant contracted

to pay to the plaintiff four thousand dollars annually during her life. That, of course, is nothing but a pure fiction. The parties certainly did enter into a contract of marriage with each other, and while that is admitted to be the most important and binding of all contracts, no one ever claimed that the legislature or the court violated any provision of the Constitution in dissolving it. The contention is that the court in dissolving the marriage with one breath, in the next created a new contract which is *indissoluble*, and that is the obligation of the defendant to pay to the plaintiff a reasonable sum out of his estate, and that sum was found to be at that time four thousand dollars a year. Alimony is the support which the court decrees in favor of the wife as a substitute for the common-law right of marital support. No one denies the power to deprive the wife of that common-law right for any fault on her part that the legislature may judge to be sufficient, but it seems that the substitute under the decree is more sacred and unchangeable than the original right which she acquired by the marriage, since the latter may be affected by legislation, while the former cannot be.

An unsound or fallacious argument is often exposed by following it up to all of its natural or logical sequences, but it is not necessary to pursue that form of reasoning any farther in this case, since it is as well settled by authority as any question can be, that the provision for alimony in the judgment in this case is not a contract within the meaning of the Constitution. It has been so decided by this court and by the Supreme Court of the United States, which is the court of last resort upon all questions of this character. In *O'Brien* v. *Young* (95 N. Y. 428) it was held than even an ordinary money judgment was not a contract. The question arose upon the act of the legislature in reducing interest from seven to six per cent. (Laws of 1879, ch. 538.) The act in terms excluded from its operation " any contract or obligation made before the passage of this act." The judgment was rendered before the law was passed, and the contention was that it came within the exception, but this court held, after very full discussion, that the

judgment was not a contract, and that the legislature had power to reduce the interest one per cent, and of course if it could so reduce the interest on a seven per cent judgment, it could reduce it to two per cent. It was subsequently decided that a judgment was not an express or implied contract within the meaning of section 638 of the Code, which authorized an attachment in actions upon such contracts. (*Remington Paper Co.* v. *O'Dougherty,* 32 Hun, 255; affirmed, 96 N. Y. 666.) But this view seems to have been subsequently modified, at least so far as to allow the provisional remedy in such an action. (*Gutta Percha & R. Mfg. Co.* v. *Mayor, etc., of Houston,* 108 N. Y. 276.) But the cases in the Federal court are so clear and conclusive that they leave no room for doubt or distinctions. In *Chase* v. *Curtis* (113 U. S. 464) that court stated the rule in the following terms: "And it was decided by this court in the case of *State of Louisiana* v. *Mayor of New Orleans* (109 U. S. 285) that a liability for a tort, created by statute, although reduced to a judgment by a recovery of the damages suffered, did not thereby become a contract, in the sense of the Constitution of the United States, forbidding state legislation impairing its obligation, for the reason that the term 'contract' is used in the Constitution in its ordinary sense as signifying the agreement of two or more minds, for considerations proceeding from one to the other, to do or not to do certain acts. Mutual assent to its terms is of its very essence." In the case cited above by the learned court the following is the language of the opinion: "A judgment for damages, estimated in money, is sometimes called by text writers a specialty or contract of record, because it establishes a legal obligation to pay the amount recovered; and, by a fiction of law, a promise to pay is implied where such legal obligation exists. It is on this principle that an action *ex contractu* will lie upon a judgment. But this fiction cannot convert a transaction wanting the assent of the parties into one which necessarily implies it. Judgments for torts are usually the result of violent contests, and, as observed by the court below, are imposed upon the losing party by a higher

authority against his will and protest. The prohibition of the Federal Constitution was intended to secure the observance of good faith in the stipulation of parties against any State action. Where a transaction is not based upon any assent of parties, it cannot be said that any faith is pledged with respect to it, and no case arises for the operation of the prohibition."

A marriage contract may be dissolved by a direct or special act of the legislature, and such a law does not impair the obligation of a contract. Marriage is something more than a mere contract. It is a *status* or institution of society founded upon the consent of the parties and the subject of regulation by law. It is not embraced within the terms or meaning of the Constitution which forbids the states from enacting laws impairing the obligation of contracts. (*Maynard* v. *Hill*, 125 U. S. 190; *Hunt* v. *Hunt*, 131 U. S. Appendix, 165.) The contention that the provision for alimony in this judgment is a contract may, therefore, be dismissed from further consideration

The only other conceivable ground that the statute in question can be assailed as violative of the Constitution must be that it deprives the plaintiff of her property without due process of law. That contention implies that this incidental provision in a judgment of divorce which the law and the courts might grant or deny at pleasure is property. It cannot be sold or transferred or bequeathed by will or pass to next of kin in case of intestacy. It has no more of the attributes of property than the common-law right to marital support, for which it is an imperfect substitute. It must be apparent that from the general nature and character of alimony and its limitations that it is taken out of the general law of property. It is a creation of equity, and a statute that empowers courts of equity to administer it or reduce or modify it as to amount or otherwise as changed conditions and circumstances may require in order to do equity between the parties, violates none of the guaranties of the Constitution for the protection of property. Will it be contended for a moment that a

woman who has procured a divorce with a large allowance of
alimony and who thereafter conducts herself morally so as to
become a public scandal, has secured such a property right in
the allowance that no power on earth can modify it simply
because the decree was entered prior to the enactment of the
statute in question? Has she acquired such an absolute right
to the allowance that the husband must keep on paying it,
although he has lost all his property and the judgment vir-
tually sends him to the poorhouse? To argue that there is
no human power capable of mitigating or modifying such
a situation is to my mind a most astonishing proposition,
and yet it is the logical result of the plaintiff's contention
in this case. It is true that no one charges the plaintiff
with even the slightest impropriety, but it is quite con-
ceivable that such a case may arise, and it is mentioned here
only to test an argument that seems to me to be infected with
a fundamental error. The truth is that neither a marriage
nor a judgment of divorce or any of its incidents is property
within the meaning of the Constitution. (Bishop on M. & D.
§§ 1430, 1434.) Nothing would seem to be more reasonable
than the proposition that the state, which once exercised the
power to grant divorces, with or without alimony, by special
acts, a power which it could again resume, has still power
enough left to enact the section of the Code referred to as it
now stands. It may take the property of the citizen by the
taxing power to any extent. It may surround him with police
regulations by day and by night that restrict his liberty and
affect his property, but it seems, from the argument of the
learned counsel for the plaintiff, that there is one thing that
the state cannot touch, even to promote justice, and that is a
woman's alimony when the judgment is more than three
years old. It has been often held that the courts have inher-
ent power to open judgments and grant new trials for newly-
discovered evidence, and this is done long after the judgment
has been entered and even after it had been affirmed in this
court and become final. The limit of time within which this
may be done is a matter that rests in the discretion of the

court. It has never been held or seriously suggested that the exercise of this power invaded any constitutional immunity or disturbed any vested right, and yet it is a much broader power than that expressly conferred upon the court by the statute in question since the latter permits the court only to modify the judgment with respect to the alimony and then only upon new facts and conditions arising subsequent to the entry of the judgment. It is, I think, quite safe to say that it has never been held that a provision in a judgment of divorce granting alimony was either a contract or property within the meaning of the Constitution.

It may be that detached *dicta* and remarks in text books and cases and hasty and superficial views may be picked out here and there that would seem to give some color to the contention, but they will not bear much examination. A good many crude things may be found in the books on the subject of alimony, its nature and limitations. A learned author, who has written exhaustively on the subject, overwhelmed and confused with the numerous and conflicting views, was constrained to make some remarks which, although they may savor somewhat of egotism, may very well be adopted and acted upon both by the bar and the bench : " In spite of the fact that the law consists of reason, and that reason is constantly detecting and pointing out judicial blunders, by means whereof cases wrongly decided and false doctrines are overruled, it is no novel thing for a bench of judges to accept some thoughtless utterance of a predecessor as though it were reason, without a particle of examination to see whether it is just or false. Indeed, through this sort of abnegation of the office of thinking our law has been made to linger, and it now remains in the shadows of the dark ages, instead of walking onward with the other sciences toward the light of a better future." (1 Bishop on M. & D. § 1393.) We are now dealing only with the question whether there is power enough in this sovereign state to readjust alimony and modify the allowance as to past judgments where it appears to be grossly inequitable by reason of the changed condition of the parties.

We have just held, what has often been held before, that this court never will pronounce an act of the legislature void until it is compelled to. This was in a case where there was little else but constitutional questions involved or argued. (*People ex rel. Devery* v. *Coler*, 173 N. Y. 103.) But if we were to content ourselves with a mere superficial glance at the numerous cases cited in the progress of the discussion below and here, one would be led to suppose that this court, at various times within the last thirty years, has been deciding a constitutional question that could not possibly arise until less than three years ago. These cases are all sound law, but they have no bearing on the question whether the legislature violated the Constitution in amending the Code. A brief review of these cases most prominently put forth will show that they have nothing to do with the question now before us.

The case of *Kamp* v. *Kamp* (59 N. Y. 212) was decided nearly thirty years ago. All that it decided was that the jurisdiction of the court in divorce cases terminated with the final judgment. It was also held that there was then no inherent or statutory power to modify the judgment upon proof of circumstances arising after its entry and where the financial condition of the parties had changed. That case decides what the law was prior to any legislation on the subject.

The case of *Erkenbrach* v. *Erkenbrach* (96 N. Y. 456) was decided over eighteen years ago and it simply held that the courts of this state have no common-law jurisdiction over the subject of divorce and had no powers in that respect except such as were expressly conferred by statute or were incidental to powers conferred. It was also held that the court had no power after the entry of a judgment for divorce to order an additional allowance for the support of the wife, but could make an additional allowance for the care, custody and education of the children.

The case of *Romaine* v. *Chauncey* (129 N. Y. 566) was decided over ten years ago. It was held in that case that alimony, by reason of its nature and express limitations, was taken out of the general law of property, and as it was created

by equity it should have the protection of equity, so that it may not be. perverted to a purpose for which it was not intended; that alimony is something incidental to a decree of divorce in favor of the wife and is simply the allowance for her support and not a debt due to her from her husband, but a substitute for the marital obligation of support from which the husband, because of his misconduct, is not relieved by the decree. The marital obligation is, by the judgment, made specific and measured by the court. And hence that a general duty of marital support over which the husband had a discretionary control had been changed into a specific duty. It is difficult to see how the doctrine of that case helps the plaintiff's contention.

The case of *Walker* v. *Walker* (155 N. Y. 77) was decided two years before the Code, as it now exists, had been amended. There was no question involved or decided in the case except the construction of the Code under the amendment of 1894, to the effect that the court might, after final judgment, vary the direction as to alimony. As there were then no retroactive words in the statute it was decided that it applied only to judgments rendered after its passage and not to those entered before. All that the appeal in that case involved or the court decided was the construction of the statute then existing, and the general rule was followed that it would be deemed to operate upon future judgments only and was not retroactive in the absence of express words to that effect. It is very plain that none of these cases involved any question with respect to the power of the legislature to enact the section of the Code on this subject as it now stands. They decided what the law then was, but did not attempt to decide anything in regard to the power of the legislature to change the law from time to time and make it what it now is. The Code now has supplied what was found to be wanting in these cases. It has conferred power to modify an allowance of alimony in *all* cases, and it has not yet been decided that such an act violated the Constitution.

The legislature cannot exercise any judicial power. It can-

not decide controversies, vacate or annul judgments or grant new trials. While there is no express provision of the Constitution to that effect, it is plainly implied and forbidden from the division of the different powers of government between the three departments and neither can usurp the functions of the other. (*In re Greene*, 166 N. Y. 485.) The cases on that subject have no application here, for the plain reason that by the statute in question the legislature did not attempt to exercise any judicial power whatever. It simply conferred upon the courts judicial powers that they did not possess before. That it had the right to do and it is done at nearly every session by Code amendments or otherwise. The power of the courts over judgments for alimony in divorce cases may be enlarged and made retroactive even to the extent of abolishing an existing right of appeal. (*Matter of Palmer*, 40 N. Y. 561.)

It will be seen that the discussion has been closely confined to the only question that is presented by this appeal. The parties or their conduct are of very little consequence so far as the real question is concerned. This remark is suggested by the fact that some things have been made quite prominent in the discussion of the question that are foreign to it and can serve no purpose but to prejudice and mislead the mind. For instance, it is said that the defendant contracted a second marriage in defiance of the judgment of the court. If he has done anything wrong in that respect he ought to be punished for it, but his conduct does not affect the power of the legislature to pass the law in question. Both parties have contracted a second marriage, the plaintiff in this state and the defendant in another state. If the defendant's second marriage was valid at the place where it was contracted it is generally valid everywhere. Neither the judgment nor the statute of this state has any extraterritorial operation, and so far as we can know from the record, the marriage of the one party is as good in the eye of the law as that of the other. I assume that such marriages are quite common among divorced people, and there is nothing before us to

show that either one was illegal.   If, however, there was any-
thing in the defendant's moral conduct that ought to deprive
him of the benefit of the amendment, the learned court below
had the power in the exercise of its discretion to reverse upon
the facts, but since it did not, we have no right to consider
anything but the question of law.   ( *Wetmore* v. *Wetmore,* 162
N. Y. 503.)   I think the section of the Code is not open to
any constitutional objection, and that the order of the
Appellate Division should be reversed and that of the Special
Term affirmed.

PARKER, Ch. J., MARTIN and CULLEN, JJ., concur with
GRAY, J.; HAIGHT and VANN, JJ., concur with O'BRIEN, J.
Order affirmed.