MITCHELL v. MITCHELL.

(Supreme Court, Special Term, Erie County. June 9, 1909.)

1. MARRIAGE (§ 54*)—VALIDITY—PERSON UNDER AGE OF CONSENT.

A marriage by a person under the age of consent is valid, but subject to annulment in an action brought for that purpose, as expressly allowed by Code Civ. Proc. §§ 1743, 1744.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 94; Dec. Dig. § 54.*]

2. MARRIAGE (§ 3*)—MARITAL STATUS OF CITIZENS—RIGHT OF STATE TO DETERMINE.

Each state has the right to determine the marital status of its own citizens, and prescribe the terms and conditions upon which the marriage relation may be dissolved.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 3, 23; Dec. Dig. § 3.*]

3. MARRIAGE (§ 1*)—NATURE OF OBLIGATION.

Marriage partakes more of the nature of a relation than of a contract, though the relation may be established and induced by the contract to enter into the relation.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 1; Dec. Dig. § 1.*]

4. MARRIAGE (§ 3*)—ANNULMENT—DOMICILE OF PARTIES.

The marriage domicile of the parties determines whether a divorce or annulment shall be had, regardless of where the marriage occurred.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 3, 23; Dec. Dig. § 3.*]

5. MARRIAGE (§ 3*)—ANNULMENT—MARRIAGES CONTRACTED WITHOUT THE STATE.

The courts of New York have power to annul a marriage of persons under the age of consent, when they are citizens of the state and domiciled there, though the marriage be contracted outside the state and be valid where contracted.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 3, 23; Dec. Dig. § 3.*]

6. CONSTITUTIONAL LAW (§ 55*)—LEGISLATIVE POWER—POWER TO INVESTIGATE FACTS AND GRANT DECREES.

While the Legislature may commit to judicial tribunals the investigation of facts and the granting of decrees, it may exercise that power itself.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 58; Dec. Dig. § 55.*]

Action by Marion F. Mitchell, by her guardian, against Elton E. Mitchell, to annul a marriage. Judgment for plaintiff.

Percival M. White, for plaintiff.

Irving W. Cole, for defendant.

WHEELER, J. This is an application to annul the marriage heretofore entered into between the parties on the 3d day of May, 1908, on the ground that at the time the marriage was contracted the plaintiff had not reached the age of legal consent. The evidence given before the court discloses that the plaintiff at the time of her marriage to the defendant was under the age of 18 years. Both she and the defendant

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

were at the time, and ever since have been, residents and citizens of the city of Buffalo, in the state of New York. On the 3d day of May, 1908, the parties crossed the Niagara river and went to a minister of the Gospel in the village of Ft. Erie, Canada. The plaintiff there represented herself to the officiating clergyman as over 18 years of age, and the parties were then and there married. They at once returned to the city of Buffalo. After living together two months, the parties separated. The plaintiff returned to her mother's home. The parties have not lived together since, and have not cohabited as husband and wife since the plaintiff attained the age of consent. The marriage in question was contracted without the knowledge or consent of the plaintiff's mother, who was her sole surviving parent and guardian.

The granting of the decree is not contested by defendant; but it has been suggested that, inasmuch as the marriage in question was valid under the laws of the province of Ontario, Canada, it is valid everywhere, and cannot be dissolved by a decree of this court. The question raised is of sufficient importance to challenge the careful consideration of the court. Although we are advised that a license to marry in Canada is forbidden to be issued to persons under 18 years of age, we shall assume that, notwithstanding, the marriage so contracted was a valid marriage under the laws of Canada. We think we may also assume that the marriage in question is perfectly valid under the laws of the state of New York, subject, however, to the right to have it annulled in a proper action brought for that purpose under the provisions of actions 1743 and 1744 of the Code of Civil Procedure. If no such action is instituted, and no decree of annulment obtained, the marriage, notwithstanding the plaintiff was under the age of consent, will be deemed valid for every purpose.

It will be noted that sections 1743 and 1744 of the Code of Civil Procedure, under which this action is brought, do not in terms prohibit the contracting of such a marriage, but provide a means for annulling such marriage in case the minor or either parent of the minor sees fit to bring an action for that purpose. In other words, the provisions of the Code do not make the marriage void, but simply voidable, and prescribe the terms and conditions upon which the marriage may be annulled. It will also be observed that by the provisions of section 1749 of the Code, it is declared that:

"A child of a marriage which is annulled on the ground that one or both of the parties had not attained the age of legal consent, is deemed for all purposes the legitimate child of both parents."

It has been held in various cases, where a marriage is not void, but voidable, that the court will deny the complainant relief where the party fails to come into court with clean hands, and equitable considerations exist which render the granting of an annulment under the circumstances unconscionable. Stokes v. Stokes, 128 App. Div. 841, 113 N. W. 142, citing Tait v. Tait, 3 Misc. Rep. 218, 23 N. Y. Supp. 597; McCarron v. McCarron, 26 Misc. Rep. 158, 56 N. Y. Supp. 745; Petit v. Petit, 45 Misc. Rep. 155, 91 N. Y. Supp. 979; Kerrison v. Kerrison, 8 Abb. N. C. 444; and Taylor v. Taylor, 63 App. Div. 234, 71 N. Y. Supp. 411. These cases are cited simply for the purpose of

showing that the courts of this state do not proceed in annulling the marriage upon the theory that the marriage is absolutely void, but simply voidable, owing to extrinsic facts or circumstances surrounding or attending it. May not the courts of this state annul a marriage valid by the laws of Canada or of a sister state, when such a proceeding is authorized by the statutes of our own state and the parties to the marriage are both residents of New York? We are of the opinion that such an action is maintainable, regardless of the question as to where the marriage itself was contracted. It is a fundamental principle of law that each state has the right to determine the marital status of its own citizens, and prescribe the terms and conditions upon which the marriage relation may be annulled or dissolved. Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654; Hunt v. Hunt, 131 U. S. clxv, 24 L. Ed. 1109; Haddock v. Haddock, 201 U. S. 569, 26 Sup. Ct. 525, 50 L. Ed. 867; Livingston v. Livingston, 173 N. Y. 389, 66 N. E. 123, 61 L. R. A. 800, 93 Am. St. Rep. 600; Wade v. Kalbfleisch, 58 N. Y. 282–284, 17 Am. Rep. 250; Hawkins v. Hawkins, 193 N. Y. 418, 86 N. E. 468; Kinnier v. Kinnier, 45 N. Y. 540, 6 Am. Rep. 132.

Marriage partakes more of the nature of a relation than of a contract, although the relation may be established and induced by the contract to enter into the relation. The relation, however, is always subject to the control of the sovereignty under which the parties to the marriage live. As was said by the United States Supreme Court in the case of Maynard v. Hill, 125 U. S. 211, 8 Sup. Ct. 730, 31 L. Ed. 654:

Marriage "is something more than a mere contract. * * * Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress."

The court quotes with approval from the Supreme Court of Maine (Adams v. Palmer, 51 Me. 481–483), where it is said:

"When the contracting parties have entered into the married state, they have not so much entered into a contract as into a new relation, the rights, duties, and obligations of which rest, not upon their agreement, but upon the general law of the state, statutory or common, which defines and prescribes those rights, duties, and obligations. They are of law, not of contract. It was of contract that the relation should be established; but, being established, the power of the parties as to its extent or duration is at an end. Their rights under it are determined by the will of the sovereign, as indicated by law. They can neither be modified nor changed by any agreement of the parties. It is a relation for life, and the parties cannot terminate it at any shorter period by virtue of any contract they may make. The reciprocal rights arising from this relation, so long as it continues, are such as the law determines from time to time, and no other. * * * It is not, then, a contract within the meaning of the clause of the Constitution which prohibits the impairing the obligation of contracts. It is rather a social relation, like that of parent and child, the obligations of which arise, not from the consent of concurring minds, but are the creation of the law itself, a relation the most important, as affecting the happiness of individuals, the first step from barbarism to incipient civilization, the purest tie of social life, and the true basis of human progress."

In a case arising in our own state, the Court of Appeals said (Wade v. Kalbfleisch, 58 N. Y. 282–284, 17 Am. Rep. 250):

"The general statute 'that marriage, so far as its validity in law is concerned, shall continue in this state a civil contract, to which the consent of parties, capable in law of contracting, shall be essential,' is not decisive of the question. This statute declares it a civil contract, as distinguished from a religious sacrament, and makes the element of consent necessary to its legal validity; but its nature, attributes, and distinguishing features it does not interfere with or attempt to define. It is declared a civil contract for certain purposes; but it is not thereby made synonymous with the word 'contract' employed in the common law or statutes. * * * It cannot be dissolved by the parties when consummated, nor released with or without consideration. The relation is always regulated by government. It is more than a contract. It requires certain acts of the parties to constitute marriage, independent of and beyond any contract. It partakes of the character of an institution, regulated and controlled by public authority, upon principles of public policy, for the benefit of the community."

Many other emanations from courts entitled to the highest respect might be cited. We think the doctrine laid down in the opinions quoted are the generally accepted law of the land, and we think the view of the law so expressed is decisive of the case now under consideration.

It is true the marriage contract between the parties was entered into within the Dominion of Canada; but the parties were residents of the state of New York, and when they married they contemplated an immediate return to this state. The relation established by the marriage was not to be sustained in Canada, but in New York. It was intended by the parties to be carried out in the state of New York, and such contract as they made may be said to have been made by them with the view and expectation that the mutual obligations imposed should be subject to the laws of this state, and subject to the laws of this state so far as those laws authorized a dissolution of the marriage ties by judicial proceeding for any cause. The marriage domicile of the parties is to determine the question as to whether a divorce or annulment shall be had. It was said in Cheely v. Clayton, 110 U. S. 701, 4 Sup. Ct. 328, 28 L. Ed. 298, that:

"The courts of the state of the domicile of parties doubtless have jurisdiction to decree a divorce in accordance with its laws, for any cause allowed by those laws, without regard to the place of marriage, or to that of the commission of the offense for which the divorce is granted."

This language is quoted with approval by the same court in the case of Atherton v. Atherton, 181 U. S. 163, 21 Sup. Ct. 544, 45 L. Ed. 794. It was also said by our own Court of Appeals in Kinnier v. Kinnier, 45 N. Y. 544, 6 Am. Rep. 132, that:

"It is now said that the lex loci which is to govern married persons, and by which the contract is to be annulled, is not the law of the place where the contract was made, but where it exists for the time, where the parties have their domicile, and where they are amenable for any violation of their duties in that relation."

The Court of Appeals, in the cases of Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505, and Thorp v. Thorp, 90 N. Y. 605, 43 Am. Rep. 189, reiterated the well-recognized rule of law that a marriage valid where contracted is valid everywhere. It applied the doctrine to cases where divorced parties, notwithstanding the prohibition

of the statute against remarriage, went out of the state and in violation of the law contracted second marriages which were held valid. These decisions were based upon the theory that the prohibition of the statute against remarriage was in the nature of a penalty; that penal statutes did not operate beyond the territorial limits of the state, and a state would not punish acts committed beyond its borders unless there is "a special provision of law declaring the act to be an offense, although committed out of the state"; that, inasmuch as there was no such provision in the statute in the case of second marriages of guilty divorced persons, the marriage was to be deemed valid.

These cases, however, do not meet the case here presented as to whether our courts may annul a marriage of parties under the age of legal consent. Suppose there had been on our statute books a law authorizing the state courts to annul a marriage contracted by a guilty divorced party. Can there be a serious question but that in such a case it would be the duty of our courts to entertain a suit to annul such a marriage where it was brought by a citizen of the state against another citizen of the state? Would it be any answer to such an action to say that the marriage was valid in the foreign state, and therefore, notwithstanding the statute of New York permitting an annulment, the courts of this state had no power to dissolve the marriage? We think not. A decree in such an action would not necessarily find such a foreign marriage void. The parties to it might go to any state in the Union, and the marriage be perfectly good, the issue deemed legitimate, and the obligations of the marriage enforced; and, notwithstanding, our own state having the reserved right to determine the marital status of its own citizens, might commit to its courts the right to annul the marriage and dissolve the marriage relation. By analogy, and for the same reasons, we think the courts of this state have ample power to annul a marriage entered into outside the state by parties under the age of consent, when the parties are citizens of this state and domiciled here.

It can make no difference, we think, in the application of this principle, whether you term the formal dissolution a divorce or annulment. To do so would be simply juggling with terms. A decree annulling the marriage in this case terminates the marriage relation, which, but for the decree, would be valid and binding on the parties, as we have already seen. The state of New York, represented by its Legislature, has the sovereign right to say when and how the marriage relation existing between its citizens may be dissolved or annulled. If in its wisdom the Legislature has seen fit to declare that marriage entered into before a woman attains the age of 18 shall be subject to a decree of annulment on certain conditions, it simply remains for the court to carry out the purposes and intentions of the sovereign lawmaking power. It is to be noted in this connection that our statute under which this action is brought does not make the right to bring it dependent at all upon the question as to where the marriage was contracted. The Legislature may, and properly should, commit to judicial tribunals the investigation of the facts and the granting of decrees; but it may exercise that power itself.

In the case of Maynard v. Hill, 125 U. S. 190, 8 Sup. Ct. 723, 31 L. Ed. 654, the Legislature of the state of Oregon passed an act dissolving the bonds of matrimony between husband and wife, and the Supreme Court held that such an act was an exercise of legislative power "upon a rightful subject of legislation," on the theory that Oregon had the right and power to determine the marital status of its own citizens. See, also, Livingston v. Livingston, 173 N. Y. 389, 66 N. E. 123, 61 L. R. A. 800, 93 Am. St. Rep. 600. This state has seen fit in its wisdom to discourage marriages contracted by immature persons, who have not reached the age of consent, and has provided for the annulment of such marriages under certain circumstances and conditions. Citizens of this state should not be permitted to evade the laws of this state by crossing state lines and contracting marriages hostile to the general policy of our laws. See Andrews v. Andrews, 188 U. S. 14, 23 Sup. Ct. 237, 47 L. Ed. 366.

By this statement we do not mean to contend that, because parties leave the state to evade its law, that fact necessarily renders a marriage so contracted void, but that, in construing and interpreting the provisions of the Code in relation to the right to annul such marriages, such right should not be destroyed or defeated by the circumstance of an attempted evasion of the provisions of the law. We find nothing in the case which, in our opinion, justifies the court in refusing to grant the decree of annulment asked.

Let the usual judgment, therefore, be entered.