THE TRUST COMPANY OF AMERICA, Appellant, *v.* UNITED
BOXBOARD COMPANY, Respondent.

Practice — erroneous designation of judicial mandate as an
order, when it is in effect a final judgment — when it will be
reversed.

The fact that a paper is labeled an order does not determine its
character, if in fact it has all the attributes of a final judgment.
Where it is a document amending the final judgment, in effect
reversing one of its adjudications, and substituting a different one,
it, in that sense, is, itself, a final judgment and as such appealable
to this court, and will be reversed.

*Trust Co. of America* v. *United Boxboard Co.*, 162 App. Div. 855,
reversed.

(Argued November 10, 1914; decided January 5, 1915.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered
July 3, 1914, which reversed an order of Special Term
denying a motion for an order to compel payment by the
plaintiff to the defendant, as holder of sixteen bonds of
United Boxboard and Paper Company to the face value
of $16,000, of the *pro rata* share of the proceeds of the
foreclosure sale of stock of the American Strawboard

Company under the judgment and final order of distribution in the above-entitled action.

The facts, so far as material, are stated in the opinion.

*Henry L. Scheuerman* and *John G. Boston* for appellant. The order is reviewable in this court. (*Newton* v. *Russell*, 87 N. Y. 521; *Peri* v. *N. Y. C. & H. R. R. R. Co.*, 152 N. Y. 521; *Velleman* v. *Rohrig*, 193 N. Y. 439; *Merges* v. *Ringler*, 158 N. Y. 701; *Livingston* v. *Livingston*, 173 N. Y. 377; *Conlon* v. *Kelly*, 199 N. Y. 43; *Guasti* v. *Miller*, 203 N. Y. 259.) The bonds mentioned in the moving papers are excluded from distribution by the terms of the interlocutory judgment and final order. (Black on Judgments, § 123; *Beebe* v. *Mead*, 101 App. Div. 500.)

*H. Aaron* and *Leslie H. Groser* for respondent. This court is without jurisdiction to review the order appealed from. (Code Civ. Pro. § 190; *Van Arsdale* v. *King*, 155 N. Y. 325; *Merriam* v. *W. & P. Lithographing Co.*, 155 N. Y. 136; *New York Security Co.* v. *S. G. & El. L. Co.*, 156 N. Y. 645; *City of Johnstown* v. *Wade*, 157 N. Y. 50; *Matter of Small*, 158 N. Y. 128; *Guarantee Trust Co.* v. *P., R. & N. E. R. R. Co.*, 160 N. Y. 1; *Matter of White*, 95 App. Div. 104.)

MILLER, J. This action was brought to foreclose a mortgage made by the United Boxboard and Paper Company, a New Jersey corporation, to the plaintiff (now the Equitable Trust Company of New York), as trustee, covering certain shares of stock of the American Straw Board Company, to secure the bonds of the mortgagor which were to be certified and delivered by the trustee upon the delivery to it of said stock. Upon the dissolution of the mortgagor company, its assets were transferred to the defendant by a reorganizing committee. The stock covered by the mortgage was sold upon the

foreclosure sale for $250,000 to a committee representing $1,190,050 of bonds. The interlocutory judgment provided that a purchaser should be entitled to apply bonds held by him towards the payment of the purchase price by crediting thereon the amount to which each bond would be entitled out of the proceeds of the sale. After making that credit and paying the costs, commissions and expenses of the foreclosure, there remained for distribution among the other bondholders $17,306.82. The defendant, claiming to be the holder of $16,000 of bonds, which were entitled to share in the distribution, made the motion which has resulted in the order appealed from.

The first question to be decided is whether the order is appealable, and that depends, of course, upon whether it is a judgment or an order finally determining an action or a special proceeding. (Code of Civil Procedure, section 190.) It is labeled an order, and is entitled in the action. It is certainly not an intermediate order, as it was made after final judgment. It is final with respect to the matters involved in it, as it directs the trustee, the appellant, to pay to the respondent the sum of $3,256, which it adjudges to be its distributive share of the proceeds of the foreclosure sale, together with interest, and, in the event of the failure of the trustee to comply with the order, it grants the respondent leave to issue execution. Thus the paper entitled as an order in an action has all of the attributes of a final judgment. To determine its force and effect, it is necessary to ascertain precisely what, if anything, was adjudicated by the judgment proper in the action with respect to the said $16,000 of bonds. We shall assume now that the record discloses, as a matter of fact, that those bonds were entitled to share in the proceeds of the sale.

The court found that of the $1,402,400 of bonds of the United Boxboard and Paper Company, certified and delivered by the trustee, bonds aggregating $16,000 in principal

debt remained unissued in the treasury of the company, and that the balance were delivered to holders for value, that of the latter, $212,350 were redeemed and paid prior to the beginning of the action, leaving outstanding, and unpaid, bonds aggregating in principal debt $1,174,050. It conclusively appears, and is undisputed, that the $16,000 of bonds, referred to in the findings as unissued, were the identical bonds which are the subject of the present appeal. The evidence in support of that finding consisted of a tabulation from the defendant's books prepared by its secretary and treasurer at the request of its general counsel and furnished to the plaintiff for the very purpose of proving the amount due. That tabulation states the amount of the original issue and deducts the amount redeemed at different times, showing a balance of $1,190,050. From that sum are deducted "bonds in treasury, $16,000" and "script, $60," total, $16,060, leaving a balance of $1,173,990, which is described as "bonds actually out." It is suggested by the respondent that the court made a mistake from the similarity of names of the defendant and the mortgagor; that the said statement merely meant that there were $16,000 of bonds in the treasury of the defendant, not $16,000 of bonds remaining unissued in the treasury of the mortgagor, as the court is assumed to have concluded from the statement; but it is a little difficult to reconcile that claim with the concluding statement in the tabulation furnished by the defendant of the amount of "bonds actually out." The mistake was made by the officer of the defendant who prepared the tabulation.

The interlocutory judgment adjudged that there was due and payable in principal debt the sum of $1,174,050, and that the proceeds of the sale be applied first to the payment of costs and expenses, etc., "and thereafter to the payment, without preference of principal over interest, or interest over principal, to the holders of bonds and coupons *of the sum herein adjudged to be due to*

22

*them* \* \* \*." (Italics are mine.) The sum herein
adjudged to be due was the said sum of $1,174,050 with
interest and did not include, as we have seen, the $16,000
of bonds in controversy. The sum allowed the purchasers
for the $1,090,150 of bonds held by them ($224,870.70),
was computed on the basis that there were $1,174,050,
not $1,190,050, of bonds outstanding, and of course they
thus received a larger allowance than they would have
been entitled to if the said $16,000 was a part of the
mortgage debt. Upon the report of the referee a final
judgment was entered. It is also entitled as an order in
an action, but it in terms adjudged that the purchasers
were entitled to be allowed said sum of $224,870.70 in
reduction of the amount to be paid by them under their
bid, and after providing for the delivery to the purchaser
of the shares of stock of the American Straw Board Com-
pany sold upon the payment of the balance of the pur-
chase price and for the payment of costs and expenses
that the referee pay to the Equitable Trust Company of
New York, the successor by merger to the plaintiff, the
balance, and "that the Equitable Trust Company of
New York, after deducting from the sum of Seventeen
Thousand, three hundred and six Dollars and eighty-two
cents ($17,306.82) the actual cost of publication of such
notice to present bonds and coupons, as it may deem expe-
dient to give to the holders of bonds and coupons, and all
other actual expenses of the distribution hereinbelow
directed, distribute the balance of said sum *pro rata*
among the *holders of bonds of the issue mentioned
in the judgment herein*, and coupons for the interest
thereon maturing July, 1911, other than bonds and
coupons presented to the referee for credit as herein-
before provided, without preference or priority of bonds
over coupons or coupons over bonds." (Italics are mine.)
If the words italicized in the paragraph just quoted stood
alone it might be possible to argue that "bonds of the
issue mentioned" referred to the $1,402,400 certified and

delivered by the trustee as found by the court; but when construed in the light of all of the provisions of the interlocutory judgment, and of the findings, that position at once becomes untenable. The finding was that the $16,000 of bonds were never issued, so they could not have been a part of the issue mentioned in the judgment. The amount issued was $1,386,400, of which there remained due and unpaid, as adjudged by the interlocutory judgment, the sum of $1,174,050, again excluding the $16,000 of bonds, which are incontrovertibly identified as the ones not issued. The case is not one, therefore, of a mere mistake in computing and adjudging the amount due, which, of course, could not result in depriving any bondholder of his share of the proceeds of the sale. In effect, it was adjudicated that the particular bonds in controversy had not been issued, and that adjudication is as conclusive as though the judgment had in terms adjudged that the particular bonds described by reference to their serial numbers or otherwise had never been issued.

So long as that adjudication stands, unchanged and unreversed, the defendant is bound by it.

That the defendant understood the force and effect of the judgment is plainly shown by the motion which it made to correct the interlocutory and final judgment " and all the other proceedings herein by adding to the amount of bonds outstanding and entitled to participate in the distribution of foreclosure herein $16,000 of bonds held by the defendant." We do not now say that that was the proper way to correct the mistake, conceding one to have been made. The question is not important for the motion was denied and no appeal was taken from the order.

Thus it appears that the order appealed from directs the trustee to pay to the defendant the sum stated as its distributive share of the proceeds of the sale on account of bonds which the judgment adjudged had never been

issued. The order then in effect, though not in terms, reversed the final judgment in part, and adjudicated differently. It thus became *pro tanto* a substitute for the final judgment, and as to the particular matter involved it became a final adjudication of the rights of the parties, and is to all intents and purposes a final judgment. It is of little consequence that the paper is labeled an order. Indeed, the final judgment in the foreclosure action is so labeled. The respondent is proceeding on the mistaken notion that it is merely asking to have the terms of the judgment carried out, and of course that was the view on which the Appellate Division made the order appealed from; but we are concerned with the real effect, not with the avowed or expressed purpose, of the order.

It may be that technically the appeal should have been from the judgment, as amended, modified, or reversed, by the said order, and doubtless that course would have been followed if the order had, in terms, assumed to reverse the final judgment; but we are not disposed to be over-nice in requiring an appellant to use a different terminology from that employed in the document appealed from. The matter is one of substance, not of terms. The notice of appeal correctly described, according to its own terminology, a document which we have said had the effect of being a final adjudication, and it also stated the effect of that document thus, " whereby it was ordered and adjudged that the plaintiff pay to the defendant out of certain funds in its hands the sum of $3,256, * * *" The document, incorrectly labeled as an order, did adjudge precisely as stated in the notice of appeal. Of course, it was wholly irregular. It was procured on motion, but without actual notice to the persons most concerned, after a final adjudication of the rights of the parties and in disregard of that adjudication, but that is not a ground for dismissing the appeal.

The order was not one denying a motion to vacate a judgment, or open a decree. (See *Van Arsdale* v. *King,*

155 N. Y. 325; *City of Johnstown* v. *Wade*, 157 N. Y. 50; *Matter of Small*, 158 N. Y. 128.) Nor was it the result of a proceeding which by express provisions of statute is to be treated as a motion in an action, and not as a special proceeding. (*Jewelers' Mer. Agcy.* v. *Rothschild*, 155 N. Y. 255.) Nor was it an intermediate order in an action. (*People* v. *American Loan & Trust Co.*, 150 N. Y. 117; *New York Security & Trust Co.* v. *Saratoga G. & El. L. Co.*, 156 N. Y. 645.) Nor was it merely incidental and auxiliary to the judgment, itself, to carry out and enforce rights settled and determined by the judgment. (*Knickerbocker Trust Co.* v. *Oneonta, C. & R. S. R. Co.*, 197 N. Y. 391.) But it is rather a document amending the final judgment, in effect reversing one of its adjudications, and substituting a different one, and in that sense is, itself, a final judgment and as such appealable to this court. (*Wetmore* v. *Wetmore*, 162 N. Y. 503; *Matter of Hulbert Bros. & Co.*, 160 N. Y. 9; *Livingston* v. *Livingston*, 173 N. Y. 377.)

Enough has been said to show that upon the merits the order, so called, should be reversed, and the order of the Special Term affirmed, with costs in the Appellate Division and in this court.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, HOGAN and CARDOZO, JJ., concur.

Order reversed, etc.