Kerrison agt. Kerrison.

---

# SUPREME COURT.

## OLIVIA M. KERRISON, sueing as OLIVIA M. JENS, agt. JOHN D. KERRISON.

*Marriage — validity of — Prohibition in divorce decrees — Effect of marriage solemnized in another state when forbidden by a judgment of a court of this state — Under what circumstances such marriage will not be annulled.*

In 1875, judgment of divorce was obtained in this court against the defendant by his wife Ellen for his adultery, and by the terms of the judgment the defendant was prohibited from marrying again until Ellen should be actually dead.

In 1875, Ellen being still living, the parties to this action, for the purpose of evading the prohibition contained in such decree, went to the state of New Jersey and were there married, intending to and in fact returning soon thereafter to this state, where the defendant was at the time a domiciled resident, and where the plaintiff also resided. At the time this action (which was brought to declare the marriage void) was begun, the defendant was, and now is, a British subject and a resident of Canada, the summons being served by publication. The defendant appears and answers, but in his answer denies the jurisdiction of the court in the premises:

*Held*, that, it is an open question whether legislation upon the subject since the adjudications holding such marriage to be void, has given such

a legislative interpretation to the old statute, that a prohibition against a subsequent marriage was intended only as a punishment of the offending party.

*Held,* also, that if the marriage of the parties *was* illegal, the plaintiff is not in position to ask to be relieved from its bond. The facts as stated, being fully borne out by the proofs, render it extremely improper for the courts to afford the plaintiff any relief The law does not interfere between those who are equally in the wrong.

The case of *Marshall* agt. *Marshall* (2 *Hun*, 238) criticised and not followed.

*Special Term, September,* 1880.

MOTION on behalf of the plaintiff to confirm the report of the referee and for judgment annulling the marriage of the parties.

*Francis M. Scott,* for plaintiff.

*C. Stewart Davison,* for defendant.

MACOMBER, *J.* — The defendant and one Ellen Flynn were married in the month of May, 1869, at Toronto, Canada. On the 21st day of May, 1875, judgment of divorce was obtained in this court against the defendant by his wife Ellen for his adultery, and by the terms of the judgment the defendant was prohibited from marrying again until Ellen should be actually dead. On the 14th day of October, 1875, Ellen being still living, the parties to this action, for the purpose of evading the prohibition contained in such decree, went to the state of New Jersey and were there married, intending to and in fact returning soon thereafter to the state of New York where the defendant was at the time a domiciled resident and where the plaintiff also resided. At the time this action was begun the defendant was, and now is, a British subject and a resident of Canada, where the summons herein was personally served upon him under an order for the publication thereof. The defendant appears and answers, but in his answer denies the jurisdiction of the court in the premises.

The referee says, in his opinion, that he feels constrained, though reluctantly, to follow the authority of *Marshall* agt.

Kerrison agt. Kerrison.

*Marshall* (2 *Hun,* 238), and so doing pronounces the marriage of the plaintiff and defendant void.

It is quite unfortunate that the expectation expressed in the vote of the learned presiding justice of the court which pronounced the decision was not realized, and the case reviewed by the court of appeals. But, it seems, that the action ended with the judgment there given. On this account, and in view of the persuasive dissenting opinion delivered by Mr. justice DANIELS, the decision has not, I think, commanded that cheerful acquiescence of the bench and bar, which is ordinarily accorded to the deliverances of that court. It has, however, upon the most important of social matters, namely, the devolution of property and the legitimacy of offspring, served to add uncertainty and insecurity to those laws whose greatest value consists in their certainty and repose. Were I permitted to do so, and were it necessary to decide this case upon the principle involved in the *Marshall case,* I should adopt the opinion of judge DANIELS as to the exposition of the law. Indeed, has not legislation upon the subject, since the decision of that case, rendered it entirely competent for the court, even at special term, to inquire into the reason for now holding to the rule which, it is claimed, was established in *Marshall* agt. *Marshall ?*

By chapter 321 of the Laws of 1879, section 49 was amended so as in a proper case to enable the court to relieve a person of the penalties of a divorce for his or her adultery. That section as amended reads as follows :

" Whenever a marriage has been or shall be dissolved pursuant to the provisions of this article, the complainant may marry again during the lifetime of the defendant, but no defendant convicted of adultery shall marry again during the lifetime of the complainant, unless the court in which the judgment was rendered shall in that respect modify such judgment, which modification shall only be made upon satisfactory proof that the complainant has remarried, that five years have elapsed since the decree of divorce was rendered,

and that the conduct of the defendant since the dissolution of said marriage has been uniformly good." ·

This is, it seems to me, a legislative enactment and a legislative interpretation of the old statute, that a prohibition against a subsequent marriage was intended to be only a punishment of the offending party.

It is true the subsequent section of the original act declares void marriage contracted in violation of the statute. But should it not be borne in mind, when marriages like this, contracted abroad, are sought to be declared void, when it is attempted to give to our statute and a decree of our court extra territorial effect, that after all the offense against our laws was not radical, but only of such a nature that a court could permit it to be done even on our own soil?

The offense, therefore, which persons commit who go hence to be married, is not *malum in se*, but *malum prohibitum*, against the effect of which they might have been relieved by a court; can it then be reasonably contended that an act of such a character, which was lawful in the state where it was committed, shall be so treated by the courts of this state as to upset the laws of inheritance and legitimacy? This is far different from the prohibition against polygamous and incestuous marriages, whether they be those under the so-called Levitical law or under a statute of the state. These things go to the root of social and state matters. The others, so far as affecting the peace and purity of the state, are non-essentials. ·

As it seems to me for our courts to hold a marriage concededly valid in a sister state, where solemnized, invalid in our own state, simply because our statute and a judgment of our courts have prohibited one of the parties to marry again within a limited period for misconduct in our state, is not, in the true spirit of inter-state comity, designed to be secured by section first of the fourth article of the Federal Constitution, nor is it in the direction of an enlightened comity of Christian nations. On the contrary, it savors a little of *intra-mural* arrogance.

The two cases mainly relied upon as sustaining the prevailing opinion in *Marshall* agt. *Marshall* arose as follows: *Brooks* agt. *Brooks* (7 *Jurist* [*U. S.*], 422) upon a marriage regarded by the British laws as incestuous; and the other, *Commonwealth* agt. *Hunt* (4 *Cush.*, 49), upon a marriage pronounced polygamous by statute. By the statute (5 *and* 6 *William IV, chap.* 54 [1835, 1836]) marriages between persons within the prohibited decrees are declared to be absolutely null and void. What those decrees are is not stated by the statute, but this is determined by the previously established rules of the Canon law and older statutes. Relationship, both by consanguinity and by affinity, is comprehended within the prohibition in accordance with the so-called Levitical decrees. Hence it is that marriage, in England, with a deceased wife's sister is within those decrees and consequently void. In the way of such marriages the Catholic church has placed an *impedimatum dirimus*. That prohibition became a part of the Canon law, and later it was enacted into the civil law.

The case of *Brooks* agt. *Brooks* should be read in the light of this history, which fully explains the language of lord CAMPBELL, when he brought that case within the exception to the general rule which he fully recognized, that a marriage valid where contracted, was valid everywhere. So too of the case of *Commonwealth* agt. *Hunt*. Polygamy has never been recognized by any Christian state. Until the statute pronounced the marriage polygamous, the courts of Massachusetts, I think, with uniformity held such a marriage valid (*See opinion of judge* DANIELS *above referred to*).

The learned judge, writing the opinion of the majority of the court in *Marshall* agt. *Marshall*, refrains from considering how far the case would be affected had the element of a departure from the state with the intent to avoid the former judgment been wanting. But there is, it seems to me, no middle ground. On the hypothesis of the *Marshall case*, a due respect to logic or reason will carry us to the conclusion that a marriage contracted in another state in good faith can-

not be recognized here if prohibited by our laws on any ground. Otherwise there would be imparted to the delicate and complicated contract of marriage validity or invalidity, accordingly as the intent of the parties was respectful or discourteous to our sovereignty. This would make such a relationship insecure and would thrust into the marriage contract an element necessary to its validity which no other contract requires, and would upset the well-founded rule that a contract otherwise valid is not rendered invalid by the intent with which it was performed (*Ponsford* agt. *Johnson*, 2 *Blatch.*, 51.) By reason of the act of 1879, quoted above, the question supposed to be closed in the supreme court is, I think, fairly open. But I do not purpose to enter upon a discussion of it further, nor to rest my decision on ground adverse to the *Marshall case*, for I see at hand another and sufficient reason for dismissing the plaintiff's complaint.

If the marriage of the parties was illegal, the plaintiff is not in position to ask to be relieved from its bond. The complaint alleges: "That this plaintiff and said defendant left this state as aforesaid, and proceeded to the state of New Jersey, as aforesaid, and procured said marriage ceremony to be performed in said state of New Jersey as aforesaid, *with the object and intention and for the purpose of avoiding and evading the prohibition contained in the aforesaid decree of this court hereinbefore set forth, and the effect and consequences of the statute pursuant to which said prohibition was included in said decree.*

That at the time said marriage ceremony was performed, as aforesaid, neither this plaintiff or the said defendant had any intention of residing or remaining in said state of New Jersey, but they both intended and expected to return to this state as soon as said marriage ceremony had been performed."

These allegations being fully borne out by the proofs render it extremely improper for the court to afford the plaintiff any relief. The law does not interfere between those who are equally in the wrong. *In pari delicto portior est conditio*

*defendentis* (*Peck* agt. *Burr*, 10 *N. Y.*, 294; *Tracy* agt. *Talmadge*, 14 *N. Y.*, 162, 181, 216; *Candee* agt. *Lord*, 2 *N. Y.*, 269, 276; *Meech* agt. *Stoner*, 19 *N. Y.*, 28; *Vischer* agt. *Yates*, 11 *Johns.*, 26; *Story Eq. Jur.*, secs. 61, 298; *Story on Ag.*, 198).

The plaintiff was swift in her steps to evade the judgment of this court . pronounced against her lover, and made that lover her husband notwithstanding such judgment. The court, I think, now reposing on the maxim already quoted, exercises its highest prerogative in doing nothing. It leaves the parties equally in the wrong where it finds them. The plaintiff has made her bed, let her lie in it.

The defendant's exceptions to the findings of fact of the referee are overruled. His exceptions to the conclusions of law are sustained. Judgment is directed for the defendant upon the facts found, but not with costs.