In the Matter of the Application of ELIZA TYLER for Revocation of Letters of Administration upon the Estate of OWEN TYLER, Deceased.

ELIZA TYLER, Respondent, v. GEORGE A. TYLER, Appellant.

*Subsequent marriage by a wife guilty of adultery who has been deserted — proof of desertion and as to the residence of the husband, required.*

Assuming that a wife whose adultery causes her husband to leave her, can, after the expiration of five years, bring herself within the provisions of the statute protecting subsequent marriages, where the wife has been deserted by her husband, something more than the mere act of desertion by the husband must be shown; it must be shown where the husband went to reside, or that diligent inquiry in that respect had proved unavailing; that he had abandoned his for- · mer resorts or occupations, and, if his residence was discovered, that he had afterwards abandoned such residence without leaving any trace of where he had gone.

APPEAL by George A. Tyler from a decree of the Surrogate's Court of the county of Kings, entered in the office of the clerk of the Kings County Surrogate's Court on the 1st day of November, 1893, vacating and revoking the letters of administration issued to George A. Tyler on the goods, chattels and credits of Owen Tyler, deceased.

*Arthur L. Livermore*, for the appellant.

*Charles M. Stafford*, for the respondent.

CULLEN, J. :

This is an appeal from a decree of the surrogate of Kings county, revoking letters of administration to the appellant, and confirming the issue of such letters to the respondent. The appellant is a son of the deceased; the respondent claims to be the widow of deceased.

The only question is as to the respondent's marriage with Owen Tyler, which issue the learned surrogate decided in her favor.

The marriage claimed by the respondent was unceremonial. It is not necessary to review the evidence by which it was sought to be established, for in our opinion on the case made by her she was unable to contract the marriage. Concededly Eliza Tyler was married to one Roland Parker, and, as found by the surrogate, resided with him as his wife till the year 1880. Previous to that time the respondent had formed an adulterous connection with the deceased, which relation continued (adulterous or lawful) up to the latter's death. In 1880 Parker left the respondent. In 1886 a son of Parker and the respondent was shot, and his death feared. At that time respondent sent Tyler for her husband. He found Parker and brought him to the house where Tyler and respondent were living. There is no evidence as to Parker's existence or whereabouts since that time. The respondent has made no inquiry concerning him, or endeavored to discover him since then. On these facts the surrogate found that for more than five years prior to the alleged marriage of 1891, Roland Parker had absented himself from the petitioner without being known to her to be living during that time; that she never heard whether he was living or dead; that at the time of the marriage she believed him to be dead.

The provision of law which protects subsequent marriages where

a party has been deserted by a husband or wife, is as follows: "If any person whose husband or wife shall have absented himself or herself for the space of five successive years, without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority." (2 R. S. 139, § 6.)

The person desiring to avail himself of this statute should be required to act in perfect good faith. "He cannot shut his eyes and ears and justify a second marriage because for five years he did not hear of his wife. Did he try to hear of her? Did he honestly believe she was dead? Did he make inquiry? * * * Was he excused from inquiring by a false report of her death?" (*Gall* v. *Gall*, 114 N. Y. 109.)

Judged by this rule, we think that the finding was erroneous. There was certainly no moral or legal duty upon Parker to continue to reside with his wife and her paramour. On the contrary, such conduct on his part would have been unmanly and indecent. His mere leaving his former residence under such circumstances would not constitute an absenting himself within the statute. Assuming that a wife whose adultery causes her husband to leave her can bring herself within the protection of this statute, something more than the mere leaving her by the husband should be shown. It should be shown where the husband went to reside, or that diligent inquiry in that respect had proved unavailing; that he had abandoned his former resorts or occupation; if his residence was discovered, that he afterwards had abandoned such residence without leaving trace of where he had gone. This case is barren of such proof. It is not proven where Parker went to reside when he left his wife in 1880, or where he was at work at that time. In 1886 there was apparently no difficulty in finding him to bring him to his invalid son. It does not appear that any effort has been made since to find him or to find information concerning him. The respondent's story is that she and deceased agreed that Parker was a bad man, and that they should live together till deceased could marry her. If such was the agreement, she did not want to hear of her husband. She cannot wait passively the lapse of five years without making inquiry, and then claim the protection of the statute.

The decree appealed from should be reversed; but as new evidence may be supplied on another hearing and possibly Parker be shown to have died before the time of the alleged marriage in dispute, a new trial should be had before the surrogate, costs to abide event.

BROWN, P. J., and DYKMAN, J., concurred.

Decree reversed and new trial granted before the surrogate, costs to abide the event.