(128 App. Div. 838.)

STOKES v. STOKES.

(Supreme Court, Appellate Division, Second Department. November 27, 1908.)

1. APPEAL AND ERROR (§ 931*)—REVIEW OF FINDINGS—IRRECONCILABLE FINDINGS.

The rule that, where two findings are so irreconcilable that it is impossible to harmonize them, the appellate court must accept the finding most favorable to appellant, applies only where there has been a conflict in the evidence touching a fact found, and it does not apply where there is no evidence to support one of the findings which is also contrary to the concession of counsel in open court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3769; Dec. Dig. § 931.*]

2. APPEAL AND ERROR (§ 987*)—REVIEW OF FACTS.

The Appellate Division has on appeal the right to look into the evidence and review the facts.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 987.*]

3. APPEAL AND ERROR (§ 931*)—INCONSISTENT FINDINGS—REVIEW.

Where, in an action to annul a marriage on the ground that defendant had a former husband living, it was conceded that the marriage was contracted in good faith by both parties, and there was no evidence that defendant, at the time of the marriage, knew that her former husband was living, and the court found that she had no such knowledge, but adopted proposed findings, including one that at the time of the marriage defendant knew that her former husband was living, by a memorandum at

---

*For other cases see same topic & §.NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the bottom, "Found except as indicated," the rule that, where two findings are irreconcilable, the appellate court must accept the finding most favorable to appellant, did not apply, and the court on appeal will rely on the finding that defendant did not know that her former husband was living.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3769; Dec. Dig. § 931.*]

4. MARRIAGE (§ 11*)—VALIDITY—STATUTES.

Under Domestic Relations Law (Laws 1896, p. 216, c. 272), § 3, providing that a marriage is void if contracted by a person whose spouse by a former marriage is living, unless such former spouse has been absent for five years without being known to be living, in which case the marriage is void from the time its nullity is declared by a court, a marriage contracted in good faith and in ignorance that the wife's former husband, who had absented himself for over five years was living, is voidable only.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 30; Dec. Dig. § 11.*]

5. MARRIAGE (§ 60*)—VOIDABLE MARRIAGE—ANNULMENT—GROUNDS.

Where a marriage is voidable, the court will deny relief to complainant, where he fails to come into court with clean hands.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 125; Dec. Dig. § 60.*]

6. MARRIAGE (§ 58*)—VOIDABLE MARRIAGE—ANNULMENT—GROUNDS.

In an action to annul a marriage under Domestic Relations Law (Laws 1896, p. 216, c. 272), on the ground that defendant had a former husband living, it appeared that the marriage was contracted in good faith after the former husband had been absent for over five years, that plaintiff and defendant lived together for some months before plaintiff heard that defendant's former husband was living, and that subsequently plaintiff and defendant agreed to live together as husband and wife, which they continued to do for over two years. *Held*, that plaintiff was not entitled to relief.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 120; Dec. Dig. § 58.*]

Gaynor, J., dissenting.

Appeal from Special Term, Kings County.

Action by William A. Stokes against Elizabeth W. Stokes, sued as Elizabeth W. Hitchings, sometimes called Elizabeth W. Stokes. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

George W. Wingate, for appellant.
James P. Niemann, for respondent.

WOODWARD, J. This is an action brought to procure a judicial decree annulling a marriage contracted by the parties, on the ground that the defendant had a husband living at the time of the second marriage. The trial court denied the plaintiff the relief sought, and the appeal is from that judgment.

The essential facts are found in the decision by the trial court, and are that the defendant was married on the 24th day of March, 1875, at the city of Philadelphia, to one John M. Hitchings, and they lived and cohabited together until the 26th day of November, 1896, when Hitchings left defendant and his children and went to parts unknown,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the defendant continued to live in the city of Brooklyn up to the present time, that on the 18th day of January, 1905, the defendant married the plaintiff in this state, and that for more than five years prior to the second marriage the defendant had no knowledge that her former husband, Hitchings, was alive. The further facts, so far as they are material to the disposition of this case, will be stated later in this opinion. The record discloses that plaintiff's counsel submitted to the trial court a series of requests to find, and among these requests was a proposed finding, "that at the time of the marriage of defendant with plaintiff, defendant knew that her husband, John M. Hitchings, was alive." Without strictly complying with the provision of section 1023 of the Code of Civil Procedure, which requires the court to "note, in the margin" of such requests, "the manner in which each proposition has been disposed of," the trial court made a memorandum at the bottom of the requests in these words: "Found except as indicated."

We are satisfied that the trial court must have overlooked the proposed finding to the effect that, at the time of her marriage with the plaintiff, the defendant knew her first husband, Hitchings, was living, and that, had the trial court complied with the provisions of the Code by designating on the margin of the request its disposition, it would not have fallen into the error of making inconsistent findings of fact upon this question. We find, however, the record in this shape, and it is insisted by counsel for the appellant that the rule applies that, where two findings are so wholly irreconcilable and inconsistent that it is impossible to harmonize them, it becomes the duty of the appellate court to accept the finding most favorable to the appellant, and he is entitled to rely on them in aid of his appeal. Elterman v. Hyman, 192 N. Y. 113, 84 N. E. 937; City of Buffalo v. D. L. & W. R. R. Co., 190 N. Y. 84, 82 N. E. 513; Israel v. Manhattan Ry. Co., 158 N. Y. 624, 53 N. E. 517.

If this rule is to be applied to this case, it necessitates a reversal of the judgment, and the granting of a new trial, because, by section 3 of the Domestic Relations Law (Laws 1896, p. 216, c. 272), it is provided that:

"A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: * * * (3) Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time," in which event such "a marriage is void from the time its nullity is declared by a court of competent jurisdiction."

The question therefore is before us for decision, in the first place, whether the existence of apparently inconsistent findings on the question of the knowledge of the defendant that her former husband was alive or not necessitates a reversal of this case. We think it does not, for the reason that the finding that she had knowledge is unsupported by any evidence in the case. The plaintiff's complaint contains no allegation that the defendant had such knowledge. Upon the trial it was conceded at the very outset that there was no question but what the marriage was contracted in good faith by both parties, and the case was tried out on that theory without the introduction of evidence

showing the defendant in fact had notice. It does not, it seems to us, now lie in the mouth of plaintiff's counsel to contend that the defendant in fact had notice that her former husband was alive, nor can he take advantage of the general rule enunciated in the cases above cited. We are of the opinion that that rule only applies to cases where there has been a conflict in the evidence touching a fact found, and has no application to a case where there is no evidence whatever to support one of the findings, and such finding was made contrary to the concessions made by counsel in open court. This court, on appeal, has the right to look into the evidence and review the facts, and, having found a lack of evidence of knowledge on the defendant's part, we do not think this court is required to reverse the judgment on the assumption that she had knowledge, but should stand on the finding of fact made in the formal decision that she had no knowledge her first husband was alive. In that event the statute declares that the second marriage is void only "from the time its nullity is declared."

The questions then presented are: Can the court decline to give judgment annulling the second marriage? Is the statute mandatory, conferring on the plaintiff the right to the relief sought as a matter of strict legal right, or may the court, in the exercise of its equitable powers, inquire into the circumstances, and deny the plaintiff judgment where the plaintiff does not come into court with clean hands, and to annul a marriage would be highly inequitable?

The second marriage, when entered into in good faith and in ignorance that the first husband was alive, is not void, but simply voidable. Gall v. Gall, 114 N. Y. 109, 120, 21 N. E. 106; Taylor v. Taylor, 63 App. Div. 234, 71 N Y. Supp. 411. It has been held, in various cases where a marriage is not void but voidable, that the court will deny the complainant relief, where a party fails to come into court with clean hands. Tait v. Tait, 3 Misc. Rep 218, 23 N. Y. Supp. 597; McCarron v. McCarron, 26 Misc. Rep. 158, 56 N. Y. Supp. 745; Petit v. Petit, 45 Misc. Rep. 155, 91 N. Y. Supp. 979; Kerrison v. Kerrison, 8 Abb. N. C. 444; Taylor v Taylor, supra. In Taylor v. Taylor, 63 App. Div. 234, 71 N. Y. Supp. 411, a wife sued for a separation. The husband interposed the defense that at the time of the marriage of the parties the plaintiff had another husband living, who had absented himself for over five years and was not dead, as he was supposed to be by her. He also interposed a counterclaim asking that his marriage to the plaintiff be annulled. It appeared he had lived and cohabited with the plaintiff for several years after learning the facts. The court not only decreed a separation, but gave the plaintiff alimony, and refused to annul the second marriage. The Appellate Division affirmed the judgment. The judgment was affirmed by the Court of Appeals (Taylor v. Taylor, 173 N. Y. 266, 65 N. E. 1098), although it would appear the affirmance was chiefly on grounds not necessarily involving the question of an absolute right to a decree of annulment.

It may be urged that to refuse a judgment of annulment would be tantamount to recognizing the possibility of a person having two legal wives or two legal husbands at the same time.

Commenting on the force and effect of the statute relating to mar-

113 N.Y.S.—10

riages contracted under circumstances such as in the case now under consideration, the Court of Appeals said, in the case of Gall v. Gall, 114 N. Y. 120, 21 N. E. 109:

"The section quoted seems to be based upon the probability that the absentee is dead, and is apparently designed to protect the person who, in good faith, acts upon the statute, from evil results if the absentee is actually living. The first marriage is suspended, or, as was held in Griffin v. Banks, 24 How. Prac. 213, it is 'placed in abeyance,' but it is not reinstated, by the return of the absentee, because the second marriage becomes void only from the time that it is so declared by a competent court. Otherwise, both marriages would be in force at the same time and to this extent polygamy would be sanctioned by law. The first marriage ceases to be binding until one of the three parties to the two marriages procures a decree pronouncing the second marriage void."

May not equitable considerations be presented which would require the court, in the interest of decency and fair dealing, to deny a party the relief of a decree of annulment? In the case now under consideration, the trial court found: That, after the parties to this action had lived together as husband and wife for about three months, the plaintiff heard that the defendant's former husband was living, but did not know where he was or could be located, which information plaintiff conveyed to the defendant, whereupon defendant asked plaintiff what he was going to do, to which he replied, "Don't worry, don't bother, if he does come on, as long as you behave yourself, I will stick to you," and said plaintiff expressly promised and agreed to and with the defendant that he would protect and defend her in everything that came up in regard to their marriage, that they should continue the honorable relations of husband and wife so long as she behaved herself, and that he would not, so long as she faithfully discharged her duties and obligations as his wife, bring any action to annul their said marriage, and would not, so long as she complied with said condition, become a moving party to attack or question the validity of their said marriage. That thereafter the plaintiff continued to live and cohabit with the defendant as his wife, and continued to present her in public as his wife, received his friends and everybody at his house in the same way as he did before he heard the report or rumor that her former husband was alive, and their relations as husband and wife continued down to and including the day of the service upon said defendant of the summons in this action. The court further finds that the defendant did not, by act or omission on her part, fail to comply with the conditions imposed.

It thus appears that, for more than two years after knowledge of the facts, the parties continued to sustain toward each other the relation of husband and wife. Such a relation we cannot characterize as meretricious and legally immoral, because the statute expressly declares the second marriage shall be void only "from the time its nullity is declared." The decree of nullity does not relate back and render the marriage void from the time of its contraction, but its nullity dates only from the date of the decree.

It would seem that when the plaintiff became apprised of the fact that the defendant's husband was alive, after a reasonable opportunity to investigate the facts and circumstances, he was called upon to act,

and to act with reasonable expedition and decision; that he should, without unnecessary delay, have decided upon the course to be pursued; that the plaintiff was not at liberty to play fast and loose with the defendant and the relationship created by the second marriage; and that it was unconscionable for him to induce the defendant, under promise of protection, to continue to cohabit with him as his wife, only at a later day to repudiate that relationship and bring an action to annul the marriage. His conduct as found was such which appeals to us as worthy of condemnation, and we believe we transgress no principles of law or equity in refusing the relief asked by him.

For these reasons, we think the judgment should be affirmed.

MILLER, J. (concurring). I understand that we are agreed upon the proposition that, if the second marriage was not void until and only from the time its nullity should be declared by a competent court, the plaintiff's election, after knowledge of the facts, to continue it, manifested by a continuance of the marriage relation, would defeat his right to a decree. We have before us no question of pleading, for the reason that the sufficiency of the answer was not challenged on the trial, and, had the point been made, it could easily have been obviated by an amendment.

To defeat the plaintiff's right to a decree, it was necessary for the defendant to establish two ultimate facts: (a) That her marriage to the plaintiff was contracted in good faith on her part, i. e., that her former husband had absented himself for five successive years then last past without being known to her, after diligent inquiry, to be living during the time (Domestic Relations Law [Laws 1896, p. 216, c. 272], § 3; Matter of Tyler, 80 Hun, 406, 30 N. Y. Supp. 330; Gall v. Gall, 114 N. Y. 109, 21 N. E. 106); (b) that after knowledge of the facts, the plaintiff elected to and did continue the marriage relation. The former was conceded. The latter was established by the testimony of the plaintiff himself.

At the outset of the trial, the positions of the parties were stated by their respective counsel, and it is obvious from the colloquy which occurred that the court wisely undertook to narrow the issues to what was actually disputed. For that purpose, the plaintiff's counsel was asked whether there was any question but what the marriage was had in good faith, to which he replied, "None whatever." I do not think the learned trial court or the counsel had any doubt of the precise meaning in which the phrase "in good faith" was used, or that we need have any doubt on the subject. The Court of Appeals had said what was necessary to constitute good faith in such a case as this (Gall v. Gall, supra), and obviously the learned trial judge used the expression in the sense in which Judge Vann used it in that case. The plaintiff's counsel did not misunderstand what he had conceded, nor at any stage of the trial seek to retract it. His position, plainly stated, was that, upon proof that the former husband was living, it was the duty of the court in every case to declare the marriage void. That concession took out of the case the issue as to the good faith of the second marriage and all that was involved in that issue, i. e., the fact of the former husband having absented himself for five successive years then

last past, without being known to the defendant to be living during that time, and the fact of the making by her of diligent but unsuccessful inquiry to ascertain his whereabouts and whether he was alive; and when the plaintiff's evidence was in, the other fact, which the defendant had to establish, had been sworn to by the plaintiff himself. Hence there was no need to go into the defendant's case—it was already established—and the court properly decided the case forthwith, putting the decision upon the distinct ground that the marriage was contracted in good faith, and that the plaintiff lived with the defendant two years after finding out that her former husband was living. Then was the time, if ever, for the plaintiff to raise the point that that defense was not pleaded.

It is true that the deposition of the former husband was put in evidence to prove that he was still alive. That deposition contained statements which, standing alone and not disproved, would justify and perhaps require a finding that the defendant did not make diligent inquiry to ascertain the whereabouts of her former husband; but it was plainly not offered on any such issue, for, as we have seen, that issue had already been stipulated out of the case. Hence the defendant was not required to offer evidence on the subject and was not permitted to by the court. The plaintiff should not be permitted to shift his position on appeal and assert a fact directly contrary to what he stipulated it to be on the trial. I agree with Mr. Justice WOODWARD that the rule respecting inconsistent findings can have no application to the situation disclosed by this record. There is a finding based on the conceded facts, and obviously the court never intended to make a finding inconsistent therewith. Whatever be the effect of the words "Found except as indicated," noted at the bottom of the plaintiff's requests to find, this appeal should be disposed of on the theory that the conceded facts found by the court were established, and I think we may ignore the finding, inadvertently made, if, indeed, it be held to have been made at all, inconsistent with said conceded facts. It is true that the court did not specifically and in terms find that the defendant had made diligent inquiry to learn the whereabouts of her former husband, and whether he was alive, the finding made being in the language of the statute, but, as we have seen, the stipulation that the marriage was contracted in good faith involved a concession that diligent inquiry was made (Gall v. Gall, supra), and if a further finding is needed it may be supplied. Indeed, the Court of Appeals will assume that it was made. Ostrander v. State of New York, 192 N. Y. 415, 85 N. E. 668.

HOOKER and RICH, JJ., concur.

GAYNOR. J. (dissenting). This cause is of great importance to the community as well as to the parties, and needs to be reduced to strict accuracy and treated scientifically in order to be correctly decided.

1. The complaint is under section 1743 of the Code of Civil Procedure, which provides that an action may "be maintained to procure a judgment declaring a marriage contract void, and annulling the mar-

riage," on the ground (among several grounds) that at the time thereof the defendant had a husband or wife living. The complaint alleges only the marriage of the parties, viz., in 1905, and that at the time thereof the defendant was the wife of John M. Hitchings, then living, and prays for a judgment declaring the marriage contract void, and annulling the marriage. This was accurate and scientific, for that was all that the complaint should contain; nevertheless in the opinion concurred in by my associates it is stated as a point of weight against the plaintiff that the "complaint contains no allegation that the defendant had such knowledge," i. e., that her former husband was living when she entered into marriage with the plaintiff; the false basis being thus assumed that the plaintiff had to allege and·prove this fact, instead of the burden being on the defendant to plead and prove it in order to justify the marriage. It was not for the plaintiff to anticipate defences that might be pleaded and allege facts in disproof of them. It was not for the plaintiff to allege in his complaint that the defendant knew that her former husband was living, or that she did not make diligent inquiry to find that he was alive. It was for the defendant to plead and prove this, or any other defence she claimed to have.

This the answer fully recognizes. After denying the allegations of the complaint, except that of the marriage of the plaintiff and the defendant, it pleads as a defence that the said former husband of the defendant abandoned her in this state in 1896, and absented himself for more than five successive years thereafter before she was married by the plaintiff without being known to the defendant to be living during that period; and that before her marriage to the plaintiff she made due and diligent search and inquiry to discover whether her said former husband was still living, and if so, his whereabouts, and that she failed to obtain such information, and believed him to be dead, and relying upon the statute in such case made and provided, and upon the advice of the plaintiff, was married to the plaintiff. This is the whole answer.

The statute referred to in the defence is the domestic relations law, section 3 of which provides that a marriage is "absolutely void" if contracted by a person who has a former husband or wife living, unless "such former husband or wife has absented himself or herself for five successive years then last past without being known to such per-. son to be living during that time"; in which case section 4 provides that such marriage is void only from the time its "nullity" is declared by a competent court. It is therefore obvious that the new matter pleaded as a defence was not a defence, i. e., in and of itself it would not if true defeat the action, or be a bar to it, which is the test. It was only a partial defence and needed to be expressly pleaded as such to be available (Code Civ. Proc. § 508). In the case of a marriage which is "absolutely void" the statute affords no defence or protection whatever; and in the case of a voidable marriage, i. e., one void only from the time its nullity is declared, it also affords no defence, but only the protection of making the marriage lawful until the judgment of annulment, thereby keeping its offspring legitimate and preserving

the rights accruing to the spouses while it existed. Instead of providing a defence to an action of annulment of a voidable marriage, the statute recognizes that such a marriage can be annulled, as the said section of the Code prescribes, and provides only that it shall be deemed to have been valid meanwhile, so as to save the legitimacy of its offspring and any rights which accrued thereunder. Upon such annulment the prior marriage, which meanwhile was in suspense, becomes reinstated.

And where a marriage has been contracted under the conditions prescribed by the statute, and is therefore not void, but only voidable upon it being discovered that the absent spouse was in fact alive at the time it was contracted, each party thereto must promptly decide upon such discovery whether he or she will continue it or annul it, and an election to ratify or continue it manifested by a continuance of the conjugal life, or otherwise, would, I suppose, be irrevocable and constitute a defence to an action for an annulment by either of the parties so electing, provided it were pleaded and proved. Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 Am. St. Rep. 803. The parties are under no obligation to end the marriage. It is lawful, and they have the right to continue it until the returning spouse obtains a judgment nullifying it—if he can maintain such an action, as is assumed in Gall v. Gall, 114 N. Y. 109, 21 N. E. 106. If such an election had been pleaded here in addition to and in conjunction with the matter which was pleaded as a defence, a good defence would have been pleaded, but as it is no defence was pleaded. The case is therefore reduced to the issue raised by the denial in the answer of the allegations of the complaint, and having proved them the plaintiff was entitled to judgment.

The said new matter alleged as a defence could only serve for a partial defence, if pleaded as such, on which to base a prayer by the defendant for relief that the court should also adjudge that the marriage was valid in its inception, and void only from the time of the judgment of nullity.

2. And if the case be now considered on the evidence, it will be found to be the same as it is on the pleadings. In order to prove the allegations of the complaint, the plaintiff's counsel read from the testimony of the absent husband which was taken by commission. It was then in order for him to rest the plaintiff's case, but he continued to read from the said commission testimony of the said husband which was very properly taken in anticipation to rebut any evidence that might be given by the defendant to prove the said matter pleaded as a defence, and which showed that the witness had turned property over to his wife (the defendant) and their three children, that he has a brother who resides in the borough of Brooklyn (where the defendant resided with her said former husband and has continued to reside) and practices law there; that the defendant has been well acquainted with him for years, and had professional relations with him; that the witness had at all times kept his said brother constantly informed of his whereabouts; and that he had

also from time to time communicated with the eldest son of himself and defendant, who, it further appears in the case, was living with his mother.

All of this was to show and did show that the defendant knew that her absent husband was alive when she contracted marriage with the plaintiff, or, which would be of the same legal effect, that she could have ascertained that fact by the diligent inquiry which she was obliged by law to make before contracting such marriage in order to justify it as valid in its inception under the statute already referred to. Tyler v. Tyler, 80 Hun, 406, 30 N. Y. Supp. 330; Gall v. Gall, 114 N. Y. 109, 21 N. E. 106. The plaintiff in such an action is not required to make any such proof in order to make out his case, but only in rebuttal when the defendant gives evidence of such due diligence under a defence raising such an issue; but it was nevertheless proved by this evidence that the defendant could have ascertained the whereabouts of her husband and that he was alive by making the inquiry the law required her to make of those who would naturally know where he was to justify her in marrying again, and more, that she must have known that her husband was alive, for that is the necessary inference from the fact that her son who lived with her received communications from his father regularly.

· Instead of resting even at this point, the learned counsel for the plaintiff called him as a witness to show his "good faith" in contracting the marriage, as counsel said, although no one had attacked his good faith, and more than that, it was not in issue at all. Certainly no excuse for such a droll performance (not so unusual in our trial courts hereabouts of late years, however) may be found in a passing intimation of the learned and able trial judge early in the trial that the relief prayed for in the complaint would not be granted if the marriage was had "in good faith," whatever that loose phrase may mean. If the intimation was to be accepted, or taken seriously, it was then in order for the plaintiff to prove that the marriage was contracted in bad faith instead of good faith in order to get the judgment prayed for. But of course the remark of the learned trial judge was inadvertent, and apparently grew out of the omission of the learned counsel for the plaintiff to fulfill his office by carefully reading or explaining the law of the case to the court as laid down in the statute; for the only effect of the marriage having been contracted "in good faith" (even if it could be assumed that that meant after diligent fruitless inquiry to ascertain the whereabouts of the absent spouse and whether he were alive), would be to make it voidable instead of void, and have it adjudged void only from the time of the judgment of nullity to be given in the case. The singular notion that if a marriage was entered into in good faith the court might refuse on that ground to nullify it seems to have permeated and perverted the trial, causing every one connected with it to lose the proper bearings. While so testifying the plaintiff stated that shortly after the marriage his children by his former wife and the defendant's children objected to the plaintiff and defendant living together as husband and wife and threatened to bring her absent husband on to Brooklyn where they all liv-

ed, and that, the defendant being troubled thereby, he said to her, "Don't worry, don't bother; if he comes on, as long as you behave yourself I will stick to you," and continued to live with her.

3. In this state of the case the court summarily stopped it of its own motion, and without giving the defendant opportunity to introduce evidence refused to give judgment of annulment. Thereupon the court made and signed findings of fact not only (1) of the allegations of the complaint, which were proved, but (2) also that in 1896 the absent husband left the defendant and her children in the city of Brooklyn "and went to parts unknown" to her, and also that he absented himself for more than five years thereafter before the defendant entered into marriage with the plaintiff "without being known to the defendant to be living during the said period," which were not proved, and of all of which there was no evidence whatever. There was no evidence that he went to parts unknown to her, much less when he went, or that he was absent five years; and for aught that appears she abandoned him, in which case the statute could afford her no protection. Moreover, the learned trial judge made no finding of diligence by the defendant to ascertain if her absent spouse were living before being married to the plaintiff, which was necessary to establish that the marriage was voidable instead of void, and which he could not find because there was no evidence of it; but on the contrary found at the plaintiff's request, and in accordance with the said evidence of the absent husband, and as he was bound to find by the said evidence, that the defendant "by reasonable inquiry and diligence could have ascertained through sources known to her" that her absent husband was alive; and even went further and found, as the said evidence justified, yes, required, that she did know that he was alive—in apparent contradiction of the said loose finding for the defendant that he was absent for over five years "without being known to the defendant to be living during the said period." These findings of fact are followed by the inconsistent conclusion of law that the complaint be dismissed on the merits; the ground therefor stated in the last finding of fact being "an equitable estoppel against the maintenance by him" (the plaintiff) "of any action to annul said marriage," based on the said promise of the plaintiff to stick to the defendant, and his continuance of cohabitation with her thereafter.

The conclusion is inconsistent, because the plaintiff could not elect to continue the marriage, or be estopped from seeking a judgment that it was void, for it was void ab initio—there was no marriage to continue. Being void ab initio, as was shown to be the fact by the said evidence for the plaintiff, and as would have had to be presumed in the absence of evidence by the defendant to the contrary, and as was established by the findings of fact, no defence of election, laches, or of estoppel, would lie, for to deny a plaintiff in such a case the usual judgment establishing that the marraige was void ab initio, might lead to the parties continuing to live in adultery and begetting bastards. Matrimonial actions are not equitable actions. They did not belong to chancery, but to the ecclesiastical courts, and a main ground on which they were disposed of was that of the conservation of private and public morality and the stability

of society; and that remains the rule. The equitable maxim of clean hands is not applicable.

And even if the marriage had been shown and decided by the court's findings of fact to be voidable, an election by the plaintiff to continue it instead of ending and annulling it could not be found unless on due trial of such an issue it was shown that he was fully informed of all of the facts necessary to the making of such an election, namely, the facts which would show such marriage to be voidable. Terry v. Munger, supra. But no such issue was presented by the answer, and no such issue was tried.

(a) . This is all met by the broad assertion in the opinion concurred in by my associates, that "upon the trial it was conceded at the very outset. that there was no question but what the marriage was contracted in good faith by both parties, and the case was tried out on that theory without the introduction of evidence showing that the defendant in fact had notice," viz., that her husband was alive when she entered into the marriage with the plaintiff; and this is construed as a stipulation of record of the facts the burden to plead and prove which as a partial defence was on the defendant in order to show that the marriage was voidable only, viz., that the defendant's husband abandoned her, was absent five years, and that she made due inquiry of those who would naturally know to ascertain his whereabouts and whether he was alive and was unable to learn that he was alive.

There was concededly no such statement or stipulation in the case. But in a colloquy between the court and the counsel before any evidence was taken, the learned trial judge asked the counsel for the plaintiff if he questioned that the marriage was "in good faith," to which he answered in the negative, whereupon counsel for the defendant said, "On both sides," which met with no response from any one. Presumably counsel for the plaintiff understood he was speaking for the good faith of his client only; but if it were to be assumed that he was not, and that a finding of fact could have been made by the learned trial judge on this colloquy in general terms that the marriage was entered into in good faith by both parties, what effect could be given to such a loose finding? Their good faith might have been based on a misunderstanding of the law. There are a good many people who in good faith think they have the right to marry again after their spouses have abandoned them for five years, without the necessity of any inquiry as to whether they remain in the land of the living, and who act upon that notion. Such a general finding would have been good for nothing. But not even that finding was made, nor any fact found to justify the defendant in marrying, but on the contrary it was proved and found that the plaintiff did not make due inquiry, that if she had she would have learned that her absent spouse was alive, and that in fact she did know that he was alive, as we have seen; so that not only is there no finding of fact on which to base a legal conclusion of good faith, whatever that may mean—that the marriage was not void but only voidable, if that be what is meant—but the findings made preclude such a legal conclusion. The findings are that the marriage was void.

But it is not necessary to enter into all of this, for at the end of the protracted colloquy the court said:

"Well, I will hear the evidence. There may be some question of law that may require me to take it under advisement and give it some study."

This shows that no one understood that the facts had been stipulated, but on the contrary that the evidence would be taken; and thereupon the plaintiff introduced evidence not only of the facts he had to prove, but also showing that the defendant had not made inquiry, and in fact that she knew her absent spouse was alive. Why was such evidence offered and received, and why did the learned trial judge make findings in accordance with it, if a stipulation to the contrary of it had been made of record?

But it is stated in the said opinion that the said findings were made by mistake, and should therefore be disregarded; and stranger yet that there was no evidence on which to make them, whereas the case is the other way, viz., they are supported by evidence, while the findings for the defendant of abandonment on a certain date, absence of five years, etc., are wholly unsupported by evidence. It is submitted that we have no right to treat findings of a trial court in this way. The remark that if the trial judge had noted on the margin opposite each request to find his disposition of it, in compliance "with the provision of section 1023 of the Code of Civil Procedure," he would not have made the alleged mistake, is also inadvertent, for the said section does not contain that diminutive requirement, but only that the trial judge note in the margin of the paper containing the requests the manner in which each has been disposed of. This may be clearly done by noting one or more requests as "refused" in the margin, and then writing in the margin, whether top, bottom or side, that all others are found, or vice versa, and this way is commonly used, and was used in this instance.

It is perfectly obvious that the learned trial judge did just what he intended to do, namely, found the facts which make the marriage absolutely void, as the evidence required him to do, and then gave judgment against the plaintiff on the theory of estoppel.

The plaintiff should not be ambushed or taken off his feet by surprise. He should not have been compelled to conjecture on the trial what course the court or opposing counsel was trying to pursue. A case has to be tried on issues tendered by the pleadings, or in some way, so as to be known to the parties and understood by them. The issue on which the plaintiff was beaten summarily and unawares was not tendered by the answer or in any way, certainly never entered his mind, and, as is all too apparent, just as certainly his counsel never dreamed that he was confronted by or was trying such an issue. Fairness, in addition to all else which has been stated, requires that this judgment should be reversed and a new trial had.

(b) Finally, the case comes down to this:

On the evidence and the findings the marriage was absolutely void; and yet the plaintiff was beaten on the ground that he was estopped from maintaining the action. To this there are three obstacles: First, no such issue was presented to the plaintiff by the answer,

nor by amendment or agreement on the trial; and especially should such a grave matter not be disposed of except by a fair trial of an issue raised of it; secondly, no estoppel was proved; and, third, no such rule of estoppel was applicable to the case, or, indeed, to any case to obtain a judgment that a marriage is void ab initio by reason of a former spouse living, when it is found that the marriage was void; it only applies where the marriage is found to be voidable.