## TIEDEMANN v. TIEDEMANN.

(Supreme Court, Special Term, Kings County. March 16, 1916.)

1. MARRIAGE ☞59—ANNULMENT—WHEN GRANTED.
　　Domestic Relations Law (Consol. Laws, c. 14) § 7, subd. 5, provides that a marriage between a wife, whose husband has absented himself for five successive years without being known to the wife to be living during such time, and a third person, is not void, but voidable at the suit of any of the three parties. *Held* that, to prevent annulment, the equities which intervene must be unusual and extraordinary, and only to prevent fraud.
　　[Ed. Note.—For other cases, see Marriage, Dec. Dig. ☞59.]

2. MARRIAGE ☞60(7)—ANNULMENT—EVIDENCE—SUFFICIENCY.
　　Although parties marrying while the first husband of a wife was living acted in perfect good faith, since neither the wife nor the second

husband had heard from her first husband for over seven years and did not know him to be alive, and she consulted a lawyer, who advised her that she might marry, and the second husband knew of all the facts of which the wife knew, that was insufficient to prevent annulment of the marriage at the instance of the second husband, under Domestic Relations Law, § 7, subd. 5.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 131; Dec. Dig. ⬙═⊃60(7).]

Action by William C. Tiedemann against Lillian M. Tiedemann for annulment of marriage. Judgment granted as prayed.

Julian V. Carabba, of New York City, for plaintiff.
Charles A. Oberwager, of New York City, for defendant.

CRANE, J. The law of annulment of a marriage, under section 1743, subd. 2, of the Code of Civil Procedure, is as follows: If the wife knows at the time of her second marriage that her first husband is living, the marriage is void, not voidable, and no legal proceedings are necessary to set it aside. The fact that the second husband also knew that the first husband was alive, or continued to live with the woman after discovering the truth, will not estop him from avoiding his marriage. In such a case there can be no equities to prevent the second husband declaring the marriage void. On the other hand, if the second marriage takes place under circumstances stated in subdivision 5 of section 7 of the Domestic Relations Law; that is, after the first husband has absented himself for five successive years then last past without being known to the wife to be living during that time, then the second marriage is not void, but voidable at the suit of any of the three parties, the first or second husband or the wife. It remains in full force and effect until declared void by a court of competent jurisdiction.

Suppose the parties to the second marriage, after waiting the required time, have acted in good faith and in the belief, after full and careful inquiry, that the first husband was dead, can the second husband, upon discovering that the husband is alive, annul the marriage as of right at any and all times and under any circumstances, or are there certain equitable considerations which will prevent a court granting him relief?

Stokes v. Stokes, when in the Appellate Division (128 App. Div. 838, 113 N. Y. Supp. 142) resulted in an opinion that there were such equities. Woodward, J., wrote:

"It has been held in various cases, where a marriage is not void, but voidable, that the court will deny the complainant relief where a party fails to come into court with clean hands."

The authorities cited are Tait v. Tait, 3 Misc. Rep. 218, 23 N. Y. Supp. 597, an action to annul for fraud in procuring the marriage; McCarron v. McCarron, 26 Misc. Rep. 158, 56 N. Y. Supp. 745, containing dicta upon the point, the decision being on another question; Petit v. Petit, 45 Misc. Rep. 155, 91 N. Y. Supp. 979, holding that cohabitation for two years after knowledge of the facts will bar relief. The Stokes Case was reversed in the Court of Appeals (198 N. Y.

301, 91 N. E. 793), upon the ground that the findings made out a void, not a voidable, marriage; but the question of equities was touched upon in the concluding sentence of the opinion as follows:

"While it may well be that there are extreme cases where the position of the party seeking relief of the kind sought here is so inequitable that a court of equity will refuse to interfere, no such defense was pleaded or sufficiently proved in the case before us."

[1] I take it, therefore, that equities may exist, but must be extraordinary, or of such a degree as to move the court to do an unusual thing. Thus in Brown v. Brown, 153 App. Div. 645, 138 N. Y. Supp. 602, the Appellate Division, First Department, thought that the Court of Appeals in the Stokes Case refused to apply the equitable principles involved, and therefore determined to narrow the ruling in the Berry Case (Berry v. Berry, 130 App. Div. 53, 114 N. Y. Supp. 497) to the facts thereof. While this was a mistake, as the Court of Appeals decided the Stokes Case upon the findings made by the trial court that the wife knew of the existence of the first husband at the time of her second marriage, therefore making the marriage void, not voidable, which no equities of any kind could relieve, yet the Appellate Division had in mind, no doubt, that if equitable considerations were to move the court to deny relief they must be such as to prevent a fraud. This was the intimation in Hall v. Hall, 139 App. Div. 120, page 125, 123 N. Y. Supp. 1056.

[2] If the above be a correct statement of the law, the testimony in this case compels me to give a judgment for the plaintiff, annulling his marriage to the defendant. The parties acted in perfect good faith. The defendant had not heard from her first husband for over seven years and did not know him to be alive. She consulted a lawyer, who advised her that after so long an absence she had the right to get married. These facts she communicated to the plaintiff, a sea captain who came to the port of New York a few times during the year. Taking the facts in the most favorable light to the defendant, as I desire to do, I can make out the following:

The plaintiff knew the defendant's husband, John B. Hamill, before he disappeared. He knew he had left his wife and children in 1902, and that after inquiry by the defendant could not be found. The plaintiff also knew that the defendant had consulted a lawyer, who gave the advice that after the lapse of five years the plaintiff, if she upon reasonable inquiry could not find Hamill, might legally marry again; also that the plaintiff had no knowledge, nor was he actually informed, that Hamill was dead, and that he made no inquiry on his own account to discover Hamill's existence. I might say that the plaintiff knew all the defendant knew about the facts before he married. The evidence is uncontradicted that the first time Capt. Tiedemann knew that Hamill was alive was in 1914, when he left the defendant, after having lived with her when in port and having supported her since 1909. But, granting to the plaintiff all these findings of fact, they do not establish such equities within the rules herein stated as to permit this court to deny the relief asked.

Judgment must therefore be granted, annulling the marriage of October 28, 1909, between the plaintiff and the defendant, on the ground that at that time the defendant's first husband, John B. Hamill, was alive.