Charles S. Colden, J.
Action by plaintiff husband for an annulment of his marriage to the defendant. The parties were married in Brooklyn on January 14, 1943. At the time of the marriage, there was pending in New York County an action for an annulment of marriage in which the defendant here was plaintiff against her then husband, George Keaney. She was successful in that action and an interlocutory decree in her favor was granted on February 4,1943 to become final on May 5,1943. (Mr. Keaney died on October 12,1946.)
The plaintiff herein appears to be industrious, sincere, wholesome, kind and rather naive. The defendant appears to have ■been the dominant influence in arranging for the marriage of the parties. She assured plaintiff that her decree had been granted and that she was free to marry him. She also reassured him that everything was all right when she signed an application for a marriage license which misrepresented her marital status. The plaintiff at the time of his marriage was a member of the Armed Forces of the United States. Shortly thereafter, plaintiff was shipped overseas. He made an allotment to defendant who received it during the four years that the plaintiff was away on foreign duty. The defendant was herself employed earning $50 per week. She expressed the intention to the plaintiff that the allotment money would be used for the creation of a fund with which to establish a home for them upon his. return from the service. Contrary to such assurances, the defendant spent the entire amount of the allotment for other purposes before plaintiff’s return from the Army. The plaintiff returned home from the Army in February of 1946 and immediately proceeded to establish a home for the defendant and himself. Two children were born to the parties. The plaintiff took advantage of the Government’s program for G. I.’s and studied at Brooklyn Technical High School as a result of which his earning capacity has increased.
However, the defendant took advantage of plaintiff’s absences while attending school to enjoy the society of one Howard R. Hopkins, and on April 21,1951 the defendant and Hopkins took a motor tour together through New Jersey, Pennsylvania and the District of Columbia. To pay part of the expenses of the trip with Hopkins, the defendant disposed of her wedding ring and also a watch which plaintiff had given to her. Upon her return from her tour with Hopkins, the plaintiff with kindness and sympathy forgave the defendant and arranged to establish *896 a new home in another part of Brooklyn far removed from the neighborhood where Hopkins lived. The plaintiff most sympathetically endeavored to reconstruct the home life of the parties and their children but the defendant did not forget Hopkins and on May 15, 1951 she deserted her home, her children and her husband and went back to Hopkins. She never returned to her children nor has she seen them since the day she deserted them.
The defendant now urges that the plaintiff is estopped from challenging the marriage of the parties. The leading cases appear to hold to the contrary. In Anonymous v. Anonymous (186 Misc. 772, 776) Mr. Justice Shientag said: ‘ Marriage is not only a civil contract; it is a status to which the State is a party. Her second marriage being void, the doctrine of clean hands ’ has no application, nor may any phase of estoppel be invoked. The hardship or inequity of a particular situation must yield to the paramount public policy of the State (3 Nelson on Divorce and Annulment [2d ed.], p. 291). The fact that the defendant thought her first marriage was outlawed and that the plaintiff may have acquiesced in this belief and lived with her thereafter for many years is without legal significance. For the court to leave the parties where it found them would benefit no one. The second marriage is void and either party thereto is entitled to such an adjudication in our courts.” (See, also, Brownell v. Brownell, 74 N. Y. S. 2d 136.) In Tiedemanm v. Tiedemann (94 Misc. 449, 450), Mr. Justice Crane, then at Special Term, Kings County, said: If the wife knows at the time of her second marriage that her first husband is living, the marriage is void, not voidable, and no legal proceedings are necessary to set it aside. The fact that the second husband also knew that the first husband was alive, or continued to live with the woman after discovering the truth, will not estop him from voiding his marriage. In such a case, there can be no equities to prevent the second husband declaring the marriage void.”
The rule is well stated in Stokes v. Stokes (198 N. Y. 301, 312) where the Court of Appeals said: While it may be that there áre extreme cases where the position of the party seeking relief of the kind sought here is so inequitable that a court of equity will refuse to interfere, no such defense was pleaded or sufficiently proved in the case before us.”
The record in the instant case will be searched in vain to find any inequitable conduct on the part of the plaintiff. All of his acts with reference to the marriage were based upon assurances given by the defendant. Plaintiff’s entire course of conduct was fair, just and equitable. It was the defendant who misrepre *897 sented her marital status and continued to do so throughout the married life of the parties. It was not until after her desertion of her home, her husband and her children that plaintiff ascertained the legal status of the marriage since which discovery the plaintiff has had no marital relations with the defendant.
The plaintiff is entitled to judgment declaring the marriage void and granting him an annulment of the marriage, with the custody of the children, Francis J. Gough, Jr. and Ronald Richard Gough, who are declared to be the legitimate children of the parties from whom they .are entitled to succeed as such in the same manner as other legitimate children to the real and personal assets of the plaintiff and of the defendant. No provision is made for visitation by the defendant to the children. Their best interests will be served by a complete severance of any relationship with the defendant. The children have gotten along nicely with their father and his mother and sister all through these months without a single visit from their mother. The defendant will not now be permitted to disturb the present happiness of the children. This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Proceed on notice.