**SPEER, Plaintiff, v SPEER, Defendant.**

Common Pleas, Lucas County, (Div. of Domestic Relations).

No. 2696.   Decided June 19, 1947.

Lamb, Goerlich and Mack, Toledo, for plaintiff.
Brandon G. Schnorf, Toledo, for defendant.

## OPINION

By ALEXANDER, J.

On motions: (1) by husband to modify installment alimony decree; (2) by wife for a lump sum judgment in the sum of $7,787.80; (3) by wife to require husband to show cause for disobeying decree.

The record shows (divorce decree, 6-1-35) that in January, 1934, the parties, in writing, agreed to "settle * * * all questions * * * (of) support of the wife and minor children." The agreement is part of the decree. Stripped of all surplusage and reduced to its simplest terms, the pertinent provisions are:

That husband pay for her and the two children $100.00 weekly until the youngest reaches 21; "excepting as this agreement shall be modified as hereinafter set forth, * * * ."

Then follow certain specific modifications:

Payment provisions are "modified" so that if remaining child dies or marries, wife shall receive $45.00 per week, until she remarries, dies, or husband dies.

Payment "is subject to further modification in the event said husband ,* * * suffers an impairment of earning capacity in which event a reduction shall be made * * * in proportion * * * to * * * present income;"

Then follows a provision, not termed a modification, that "payments * * * shall cease upon the death of the husband * * * and as a special consideration * * * husband does hereby agree to carry * * * life insurance * * * value of * * * $25,000.00, payable to the wife and the minor children * * * share and share alike * * * ."

On September 21, 1946, the husband filed his motion in the original action asking the court to terminate the payments (now $45.00 weekly, both children being of age, and one married,) or in the alternative, fix a lump sum in lieu of future weekly payments, on two grounds:

Since the decree, his earnings have diminished.

Since the decree, the wife has become self-supporting.

In support of his motion, the husband offered to prove that because of unemployment and illness his earning capacity and his income had been reduced since November 1, 1943.

This offer was rejected on two grounds:

1. The court is without jurisdiction to modify retroactively such an order for installment payments, on the authority of **Armstrong v Armstrong, 117 Oh St 558 (pp 563-565)** :

"Does the authority thus conferred, to modify such order, refer to installments of alimony awarded as a part of a decree of divorce, which installments are accrued and unpaid, as well as to installments subsequently maturing?

"The general rule applicable to statutory provisions of this character is stated in 19 Corpus Juris, Section 272, as follows:

" 'Statutes authorizing the alteration and modification of judgments or decrees allowing alimony have been held to have no retrospective effect, and the power to modify extends only to future installments and not alimony already accrued, in the absence of clear language manifesting contrary intent; but there is authority to the effect that a decree may be modified so as retrospectively to cut off alimony that has already accrued.'

"A number of cases supporting the text and discussing the reason for the general rule so stated are cited, including Livingston v Livingston, 173 N. Y., 377, 66 N. E. 123, 61 L. R. A., 800, 93 Am. St. Rep. 600, and other New York cases; Craig v Craig, 163 Ill. 176, 45 N. E. 153; and Delbridge v Sears, 179 Iowa 526, 160 N. W. 218.

"The Supreme Court of the United States in deciding the Sistare case, supra, announced a similar rule. The statutory provision (Code Civ. Proc. N. Y., Section 1771), with reference to modifications, which the court had under consideration in that case, was as follows:

" 'The court may, by order, upon the application of either party to the action, after due notice to the other, to be given in such manner as the court shall prescribe, at any time after final judgment, vary or modify such direction. But no such application shall be made by a defendant unless leave to make the same shall have been previously granted by the court by order made upon or without notice as the court, in its discretion may deem proper, after presentation to the court of satisfactory proof, that justice requires such an application should be entertained.'

"The court there held that no authority was conferred by this statute to cancel installments of alimony which had accrued prior to the application for modification, the language of the court being as follows:

" 'But it is equally certain that nothing in this language expressly gives power to revoke or modify an installment of alimony which had accrued prior to the making of an application to vary or modify, and every reasonable implication must be resorted to against the existence of such power, in the absence of clear language manifesting an intention to confer it. The implication, however, which arises from the failure to expressly confer authority to retroactively modify an allowance of alimony is fortified by the provisions which are expressed. Thus, the methods of enforcing payment of the future alimony awarded, provided by the statute, all contemplate the collection and paying over as a matter of right of the installments as they accrue, as long as the judgment remains unmodified, or at least, until application has been made or permission to make one in pursuance to the statute has been accorded.' "

So far as we can ascertain, the doctrine approved in the Armstrong case has never been reversed or modified by the Ohio Supreme Court.

Sometimes an unreported decision of the Lucas County Court of Appeals has been cited to us as modifying the doctrine approved in the Armstrong case: Ramberg v Ramberg, 1938, 46 Ct. App. Opin. 311. On page 316, the court said:

"However, in alimony cases where lump sum judgments are sought, the delinquent is given an opportunity to defend and to show, if he can, justifiable reasons which may cause the court, in the exercise of a sound discretion, to make such lump sum judgment a less sum than the record may show to be due, less than the complainant's claims, or perhaps refuse any such judgment."

This case involved child support and the decision was obviously sound in holding the father should be permitted to show a valid defense. (For example, he might have shown the child had died or married or became emancipated.) But it can hardly be urged that the Court of Appeals intended or attempted to overrule the Supreme Court of Ohio (or the Supreme Court of the United States) or to repudiate or vitiate the doctrine approved in the Armstrong case.

Another case cited as authorizing retroactive modification is **Van Almsick v Van Almsick, 69 Oh Ap 425,** decided by the Court of Appeals of Franklin County. On **page 434,** the court, discussing "the right of the court to modify the amount of installments then due under former orders of the courts," uses this language:

"So that, except for the general pronouncements, which might imply that the court had such authority, there is no decision of our court of last resort upon the subject."

Nowhere in the opinion is the Armstrong case cited or referred to. Moreover, at page 435 the court cites Levine v Levine, 95 Ore. 94, as holding that the power of modification as to accrued installments:

"is exercisable 'only when conditions have changed from what they were at the time the decree was entered, and the change is such as to justify and require a modification.' This interpretation of the law of Minnesota fairly states the common understanding of the law of Ohio on the subjects of the power of our courts to modify as to **future** alimony or support money installments." (Underscoring ours.)

It seems to us the use of the word "future" is significant.

Still further, that same court in an earlier case, **Aukland v Aukland, 30 Abs 461,** at **page 465,** said that in the Armstrong case

"the Supreme Court * * * announced the principle upon the rule of reason that default alimony payments are in the nature of judgments and are not subject to modification unless the entry making the order specifically provides that past due as well as subsequent payments may be modified by the court making the original judgment."

It should be noted-that in the case at bar, while power to modify is reserved in certain events, there is no syllable that "specifically provides that past due as well as subsequent payments may be modified."

From a practical standpoint, experience with some thousands of such cases has made it clear that unrestricted retroactive modification of installment orders would be a vicious practice. It was perhaps the original discovery of that truth that led to establishment of the rule against retroactive modi-

fication. True, inability to increase or decrease an order retroactively may occasionally work hardship on mother or father or husband or wife, but "hard cases make bad law," and the reasons originally advanced in favor of the rule are as valid now as they ever were.

It seems to us that to impair the rule would merely open the door to the working of many more and greater hardships, especially upon mothers and wives, for, to quote again from the Lucas County Court of Appeals in the **Ramberg** case, "if the father has not supported the child as he was ordered to do, and if his default has thrown upon others that duty and obligation, then, unless a lump sum judgment for arrearages can be entered, the father escapes his legal obligations and those who may have borne them for him have no remedy."

2. The second reason the court rejected the offer to prove is that the husband was manifestly guilty of laches in waiting nearly three years to seek his remedy. If he became ill and his earnings fell off, those facts were peculiarly within his own knowledge. The door of the court was always open to him to seek a downward revision of the amount of the alimony installments, in accordance with the contract and decree. There is no syllable in contract or decree that makes the provisions for modification self-executing. The order was not automatically reduced every time he caught cold or had a bad week financially. It was up to him to come into court and seek modification as soon as the new situation became reasonably apparent to him.

Most people become ill from time to time and most incomes fluctuate. When fortune smiled upon the husband and his earnings were above normal, the increment accrued solely to him. When his income was down and he had to cease making payments entirely, the wife would have been justified in assuming that he would resume payments when able, and make up the arrearage. Whether she did so assume is not in evidence, but the evidence does show that he did resume payments (though not in full) in June, 1946. These circumstances would hardly seem to warrant holding the wife guilty of laches in failing sooner to pursue her remedies to enforce payment.

The second ground advanced for modification, that since the decree the wife has become self-supporting, cannot be a ground to modify in this case, and the offer of evidence to prove this allegation was likewise rejected. The contract and decree specifically set forth the conditions upon which the alimony payments are to terminate or be reduced: if the wife

remarries, if she dies, or if the husband's earnings become impaired.

The decree having divorced the parties it was a determination of their ultimate relation and of the amount and condition of the alimony payments. (**Gilbert v Gilbert, 83 Oh St 269.**) It was final. It said nothing about what was to happen if the wife became self-supporting. **Expressio unius exclusio alterius est.** The parties must be held to have intended to exclude that contingency from their agreement. No ground for reformation of the contract is here presented. For the court to recognize the wife's supporting herself as ground for modification would be for the court to write a new contract for the parties.

Evidence was received which showed the husband's earning capacity has been impaired; that the ratio of his 1946 earnings to his earnings in 1933, the last full year before the contract was signed, is about 54.6 to 100. Thus he is entitled, under the contract and decree, to have the $45.00 weekly payments reduced to $24.57. As of what date should the reduction take effect? Obviously not later than the date he filed his motion, September 21, 1946.

While, under the Armstrong doctrine, the court may not modify retroactively, it nevertheless seems to be vested with some discretion in the matter. (See **Meister v Day, 20 Oh Ap 224; Ramberg v Ramberg, supra.**) Obviously it may not deviate so far from the rule as to constitute even a partial repudiation of it; its divagation would have to be so eminently reasonable and thoroughly logical that its fairness would have universal appeal. For example, a divorced father is ordered to pay weekly for the support of his minor daughter. The daughter marries. Some time later the father learns of her marriage and applies to have the order terminated. We have had mothers in such cases appear and challenge the court's right to modify retroactively by terminating the order as of the time of the daughter's marriage; but we have always assumed such right and have not yet been seriously accused of abusing our discretion or defying the Supreme Court.

In the case at bar we believe there is a factor that would warrant the court in exercising its discretion and modifying retroactively to a limited extent. As stated above, most people become ill from time to time and most incomes fluctuate. When a man gets sick and his earnings begin to fall off he can hardly tell how long that situation will prevail. The ordinary man would hope for an early improvement in the situation. If he were under court order to pay alimony he

could hardly be expected to rush into court and seek modification the first week or the first month. On the contrary, he should be commended for waiting to see if his reverses are merely temporary or likely to be more or less permanent.

How long should he wait? No specific time has ever been fixed so far as we know. Thus the answer would have to be a reasonable time. That would vary with the facts in each case.

In this case, all things considered, it seems to us the husband would have been justified in waiting about six months. By about May of 1944 he should have known whether his adversities were being ameliorated or aggravated, and he should have governed himself accordingly.

To deny him the benefit of any retroactive modification whatsoever would be to penalize him for doing what any reasonable man would have done under similar circumstances—wait six months or so, and see if matters improve; if they don't, some into court and seek relief (then, not after three years have elapsed). By the same token, it would put a premium on rushing precipitately into court on the slightest pretext.

Accordingly, in our discretion, we are allowing the husband the benefit of retroactive modification for a six months' period. For simplicity's sake the order is reduced to $24.57 weekly, effective as of March 21, 1946.

The second motion under consideration, filed by the wife, seeks a lump sum judgment in the sum of $7,787.80, covering arrearage from November 1, 1943 to March 17, 1947.

In view of the foregoing, she would be entitled to judgment for all arrearages, but only on the basis of the order as modified. We compute this at $6,757.64 from November 1, 1943 to March 22, 1947, the date of her motion, and judgment is rendered accordingly.

The third motion, also filed by the wife, seeks to have the husband show cause why he should not be punished for contempt for failure to carry the life insurance provided for in contract and decree. The only cause the husband showed was that in his opinion he could no longer afford to keep up the premiums. The evidence showed that even his reduced income was ample to enable him to keep up the premium payments, and the court finds his violation of the court's decree was wilful.

The decree required him to carry $25,000.00 life insurance, payable to the wife and minor children, share and share alike. This provision was of course for the protection of the family in case the husband should die, and was made as a "special

consideration" for the wife's agreement that the alimony and child support should not be a claim upon the husband's estate. Even if the court were asked to revoke or change this provision, it could not do so. The contract and decree said nothing about dropping the insurance for any reason.

The husband challenges the court's right to punish him for contempt because the divorce was granted to him upon the wife's aggression, wherefore the court was without authority to award her alimony, and what it did decree was not alimony but in the nature of a division of property and must not exceed the value of his property at that time. In support of his argument he quotes from **Brugman v Brugman** (decided by judges of the Third and Fifth Districts), Lucas County Court of Appeals, unreported, 42 Ct. App. Opin. 148 (p. 155) citing Heflebower v Heflebower, 30 O. C. A. 545; **Traylor v Traylor, 14 Abs 536; Kehr v Kehr, 14 Abs 475; Riebel v Riebel, 15 Abs 233;** and **Kristo v Kristo, 30 Oh Ap 29.**

These cases simply support the well-known rule that the wife can receive no alimony award where she is the aggressor. In none of them, except the **Traylor** case, was there an alimony agreement, and in that case it appears the agreement was not embodied in the decree. In each case the award of alimony was clearly "ultra vires" and obviously the husband could not be held in contempt for disobeying an invalid order.

In the case at bar the husband's argument appears specious. It ignores the fact that there was a written agreement; that it provided it should be carried into the decree in the event of a divorce; that the husband himself invoked the jurisdiction of the court and petitioned it to ratify and approve the agreement; that the court, at his instance, did approve the agreement and incorporate it in the decree and order "that all of its terms and conditions be and they hereby are made orders of this court."

The authority of the court to embody such an agreement in its decree is beyond question. And that therefore "its terms and conditions" become valid orders of the court seems equally beyond question. And the court's power to punish, by contempt proceedings, a wilful violation of any such order (unless forbidden by Constitution or statute) is likewise beyond question. The general rule is stated in a note in 124 A. L. R. 145:

"Therefore, as a matter of logic as well as a conclusion from the cases, a divorce court, which, being a court of equity,*

*(Now true in Ohio. See **In Re Cattell, 146 Oh St 112.**)

and having such jurisdiction of person and subject matter as renders valid its order that a party to the suit perform an act designated, may, presumably, enforce performance by contempt proceeding, unless the Constitution or statutes otherwise contemplate or provide. Apparently all of the cases in this annotation cited either so assume or in substance so declare * * * ."

The Constitution forbids imprisonment for debt. To imprison a man for failure to pay a debt is one thing. To imprison him for refusal to obey a specific court order, perform a designated act, is another matter. The order to carry life insurance has few of the characteristics of a debt. To us it looks more like alimony than anything else. "Alimony" means literally nourishment, sustenance, support. The order to pay so many dollars weekly was to provide for the family's support while the husband lived. The order to carry insurance was to provide for their support after he died. It is an order to the husband to "perform an act designated." No matter how one looks at it, it is "something more than a mere 'debt'." (See the Holloway case, infra.)

While a contrary view has been expressed in some states (see Spence v Spence, 290 Mich. 98) we are persuaded by the compelling logic of the Ohio Supreme Court in **Holloway v Holloway, 130 Oh St 214,** 154 A. L. R. 439. In that case the husband obtained the divorce for the wife's aggression. There was an agreement, incorporated in the decree, whereby the husband was ordered to pay child support and monthly alimony. He quit paying the alimony and the trial court found him guilty of contempt. The Court of Appeals affirmed the conviction and certified the case as in conflict with the Traylor case (supra). The Supreme Court likewise affirmed the conviction:

Syl. 1. "Contempt proceedings will lie against a husband for failure to pay alimony as provided in a separation agreement which is incorporated into and made part of a divorce decree."

Syl 2. "The enforcement, by contempt proceedings, of an award of alimony based on an agreement between the parties is not a violation of the constitutional prohibition against imprisonment for debt, the award being something more than a mere 'debt.' "

Syl. 5. "A decree granting a divorce and awarding ali-

mony is an order of the court in the enforcement of which the public has a vital interest."

Syl. 8. "An award of alimony, as distinguished from an ordinary judgment which merely adjudicates the amount owing from the defendant to the plaintiff and remits the plaintiff to his ordinary remedies by execution or otherwise, constitutes a direct command of the court to the defendant to pay the sums provided for."

We have therefore found the husband guilty of contempt. However, to jail the husband for disobeying the order would accomplish nothing at this time. It appearing that the wife and daughters were each to have a one-third interest in the insurance, and the daughters having become of age and having agreed to waive their respective interests, the court will defer pronouncing sentence upon the husband on condition he forthwith procure and maintain insurance in accordance with the decree, of the value of $8,333.33, payable to the wife.

A journal entry may be prepared accordingly, allowing exceptions to both parties.